**G. E. CLARKE et al., Partners, D/B/A Clarke, Stewart and Wood Company, Appellants,**

v.

**CITY OF WINCHESTER, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 20, 1959.

Michael A. Rowady, Winchester, F. D. Curry, Harrodsburg, for appellants.

Beverly White, Winchester, for appellee.

PER CURIAM.

Motion for an appeal from a judgment dismissing appellants' complaint seeking a recovery of $2,100 which allegedly represents the balance due appellant for constructing an auxiliary pumping station for appellee.

We have reviewed the record and are of the opinion that the evidence and law support the judgment entered in this action by the trial court.

The motion for an appeal is overruled and the judgment stands affirmed.

---

**Ernest BENGE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 20, 1959.

248

William J. Weaver, Lewis & Weaver, London, for appellant.

Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., J. Milton Luker, Commonwealth's Atty., London, for appellee.

STEWART, Judge.

Ernest Benge was convicted of the offense of having in his possession intoxicating beverages for the purpose of sale in local option territory, and was adjudged to pay a fine of $50 and serve 30 days in jail. Additionally, the judgment entered required him to execute a peace bond in the penal sum of $1,000. He has moved for an appeal, urging several grounds for reversal.

One of the main issues raised determinative of this appeal is whether Benge's motion should have been sustained to quash the evidence of his alleged crime obtained as a result of the search of his residence. The accused's conviction will stand or fall, dependent upon the legality or illegality of this search. Since we have concluded the evidence in question was procured in an unlawful manner, and, therefore, the above motion should have been sustained, it becomes unnecessary to pass upon any of the other contentions advanced for reversal.

These are pertinent facts in this case. At the October 1957 term of the grand jury of the Laurel Circuit Court indictments were returned against Benge, his wife Helen and one Virgil Bowling, who boarded with the Benges, charging them with selling alcoholic beverages in local option territory. Subsequently bench warrants issued ordering the arrest of these three persons which were placed in the hands of the sheriff.

The last part of October, 1957, two deputy sheriffs and a constable went to the Benge residence and, finding no one at home except Helen, his wife, a bench warrant was served on her and she was taken into custody. The house was then thoroughly searched and six half-pints of gin and eight cases of beer were found. Some of the gin and beer was located in a closet in one of the back rooms and the remaining portion in the refrigerator and under the stove in the kitchen. The record does not disclose the attitude of Benge's wife toward the search, as she did not testify. From the testimony of the officers who made the search, we gather that she did not consent to it.

Benge's wife was lodged in jail in London and from this place she telephoned her husband on long distance at Day-

ton, Ohio, where he was then working, to come to her aid and effectuate bail for her release. He returned to London and upon his arrival a bench warrant was served upon him similar to the one on which his wife had been arrested. Benge and his wife Helen were again indicted at the February 1958 term of the Laurel Circuit Court on the same charge as the one for which his wife, first, and he, next, had been arrested. This accusation was a joint one and has an evidentiary basis on the alcoholic beverages found in their home on the day Benge's wife Helen was arrested. Benge's conviction rests on this last indictment. He and his wife had become divorced by the time he was tried and she had departed from the state of Kentucky leaving behind the charge against her still pending.

It is admitted the officers had no search warrant when they arrested Helen Benge and afterwards proceeded to search the Benge home. As has been noted, the incriminating fruits from this search became the proof that resulted in Ernest Benge's indictment and conviction. He made timely motion to suppress this evidence which was overruled. For the purposes of this opinion, we are assuming if the search was lawful as to Helen Benge it would be lawful as to the accused, her husband.

The issue before us is whether the peace officers in making a lawful arrest of Helen Benge could, without a search warrant and in the absence of proof of consent, search the house where the arrest was made and, in case illegal or contraband goods were uncovered, these could be seized and introduced as competent evidence against her and her husband, Ernest Benge. A diligent investigation has failed to bring to light a case in this jurisdiction that has squared up to this precise question and passed on it.

Two of the most recent cases of the Supreme Court of the United States on the point held that search and seizure of incriminating personal belongings incident to a lawful arrest were permitted in the face of the Fourth Amendment to the Federal Constitution without a search warrant. These cases are Harris v. United States, 1946, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 and United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The Harris case, with four justices dissenting, allowed an entire apartment to be searched. The later Rabinowitz case, with three justices dissenting, upheld a search of a one-room business establishment wherein a valid arrest was made on the theory that such premises were under the immediate physical control of the arrested person.

It seems to us, after reading each of the majority opinions of the Harris and Rabinowitz cases, that no justification other than the bare fact of making a lawful arrest on the premises was advanced for upholding the search for and seizure of illegal goods or contraband in each instance. The later use of the fruits of crime thus obtained as evidence in the conviction of Harris and Rabinowitz was considered lawful as a matter of course. It is our view that every pertinent provision of the Fourth Amendment to the Federal Constitution was by-passed when each search and the results thereof were stamped by those cases with validity. It is our conclusion, too, the dissents to the two majority opinions are based upon such irrefutable reasoning as to why search and seizure should not have been permitted that this Court is persuaded to follow them rather than the holdings of the majority opinions.

Section 10 of the Constitution of Kentucky does not materially differ in its language from the Fourth Amendment to the Constitution of the United States, except that the arrangement of words in it is not similar. Section 10 reads: "The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

If we should hold along with the lower court that a warrant of arrest, without

more, is sufficient to justify an unlimited search of a man's home for evidence of any crime, provided only he is arrested in his home, we would never hereafter be compelled to determine that such a seach and any seizure incident thereto would be unreasonable, nor that probable cause for the search must be shown under the circumstances. More than that, no description of the place to be searched or the thing to be seized would need to be given; nor would an oath or affirmation any longer be necessary as a basis to secure a search warrant. In short, all the restrictions put upon the issuance and execution of search warrants by the above quoted constitutional provision would offer no protection as to those who are arrested in their homes.

Should we accept this view, we would be driven to believe the framers of the Constitution of this Commonwealth, and particularly Section 10 thereof, were guilty of a serious blunder when they left open another way by which searches may be made without a search warrant and with none of the safeguards that should surround the obtaining of one.

■ Of course, a warrant of arrest, or a valid reason for taking a person into custody in conformity with Section 36 of the Criminal Code of Practice, is authority for searching his person and for obtaining possession of objects upon him or in his immediate physical control. This exception is bottomed upon the long-recognized practice of taking from an arrested offender any weapons or means whereby he might inflict harm upon the arresting officer or employ such to effectuate his escape. See Youman v. Commonwealth, 189 Ky. 152, 224 S.W. 860, 13 A.L.R. 1303.

■ However, it is a totally different thing to search a man's pockets, and use against him what they contain, from ransacking his house for everything which may incriminate him, once a peace officer has gained lawful entry. In forbidding unreasonable searches and seizures, Section 10 of the Constitution of Kentucky made certain procedural requirements indispensable for lawful searches and seizures, as has been pointed out. It did not mean to substitute the good intentions of the police for judicial authorization except in narrowly confined situations. History, both before and after the adoption of the Fourth Amendment, upon which Section 10 of Kentucky's Constitution is based, has shown good police intentions to be inadequate safeguards for certain fundamental rights of man.

Mr. Justice Frankfurter made this pertinent observation on that point in his dissent to United States v. Rabinowitz, cited above, as to one of the reasons why our forefathers added the Bill of Rights, which includes the Fourth Amendment, to the Federal Constitution:

> "By the Bill of Rights the founders of this country subordinated police action to legal restraints, not in order to convenience the guilty but to protect the innocent. Nor did they provide that only the innocent may appeal to these safeguards. They knew too well that the successful prosecution of the guilty does not require jeopardy to the innocent. The knock at the door under the guise of a warrant of arrest for a venial or spurious offense was not unknown to them. * * *" [339 U.S. 56, 70 S.Ct. 442]

It appears there was no prima facie evidence introduced to obtain any convictions under the three indictments rendered at the October 1957 term. As shown, the arrests here were made under these, followed by the search and seizure described. This statement is predicated upon the fact that, as soon as the intoxicating beverages were brought to light by the search of the Benge residence and by the seizure of gin and beer therein, such evidence became the basis of the joint indictment returned against Benge and his wife Helen at the February 1958 term. In a motion asking for a reindictment of Benge and his wife Helen, the old indictments were requested to be dismissed by the Commonwealth's attorney, which was done. One

could almost say, in the light of this sequence of events, that the arrest of Helen Benge and the search incident thereto amounted to an exploratory operation to secure incriminating evidence.

Tested in the light of the foregoing principles, it is our conclusion the search in the instant case cannot be upheld. A careful reading of our cases on search and seizure emphasizes the point that Kentucky adheres to the doctrine that the pertinent provisions of Section 10 of its Constitution must be duly observed.

In the case at bar a search warrant was indispensable in order to search the Benge residence. As the search was made without one, the evidence employed to establish Ernest Benge's alleged criminal acts was illegal and therefore inadmissible, and his motion to quash this evidence should have been sustained.

Wherefore, the motion for an appeal is sustained, the judgment is reversed and the case is remanded for proceedings consistent with this opinion.