**David Lynn CRAYTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 90–SC–761–MR.**

Supreme Court of Kentucky.

Nov. 19, 1992.

Rehearing Denied March 18, 1993.

Ann T. Eblen, Louisville, for appellant.

Chris Gorman, Atty. Gen., Carol C. Ullerich, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

LAMBERT, Justice.

Cardozo defined the issue here as whether "[t]he criminal is to go free because the constable has blundered."[1] Controlling decisions of the Supreme Court of the United States generally answered "yes" until *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), in which the Court held that the United States Constitution did not, per se, require suppression of evidence obtained in violation of the Fourth Amendment. For many years, this and other state courts have had little occasion to confront the search and seizure provisions of state constitutions applying, as we were required, the Fourth Amendment and controlling federal authority to motions for suppression of evidence on grounds of an unconstitutional search. However, with the decision in *Leon* and its abandonment of automatic suppression as the remedy for every Fourth Amendment violation, this Court must now determine whether Section 10 of the Constitution of Kentucky mandates suppression for every violation.

At the outset, it is appropriate to reiterate that American federalism embodies a dual sovereignty whereby state courts must apply their own constitutions and safeguard the rights of their citizens secured thereby. While the Supreme Court of the United States is the final arbiter of federal constitutional law and its role is to establish minimum federal constitutional guarantees, this Court and other state courts are at liberty to interpret state constitutions to provide greater protection of individual rights than are mandated by the United States Constitution. This proposition was succinctly stated in *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575 (1975), as follows:

> "[A] State is free *as a matter of its own law* to impose greater restrictions on police activity than those this [United States Supreme] Court holds to be necessary upon federal constitutional standards."

For an appropriate discussion of the foregoing, see *Commonwealth v. Wasson,* Ky., 842 S.W.2d 487 (1992).

Appellant, David Lynn Crayton, was convicted of second degree arson and first degree wanton endangerment and sentenced to twenty years. He appealed to this Court as a matter of right claiming reversible error with respect to his motion for a directed verdict, his right to a speedy trial, his claim of double jeopardy, and the admission of evidence in violation of the Fourth Amendment to the Constitution of the United States and Section 10 of the Constitution of Kentucky. We ordered supplemental briefing on the search and seizure issue under Section 10 and heard oral argument. We will address this issue first.

About one week after a fire in a building known as the Club Cabana, a warrant was obtained to search appellant's residence for various products and devices which were believed to have been used to ignite the fire. The affidavit for the search warrant was signed by Terry Jo Keeling, an officer of the Paducah Fire Department, and presented to the Honorable Ron Daniels, Judge of the McCracken District Court. On review of the affidavit, the court authorized the search and the warrant was executed by the officers. The search revealed evidentiary items which were seized, introduced against appellant at trial, and contributed to his conviction.

Prior to trial appellant moved to suppress the items seized on grounds that the affidavit in support of the search warrant did not establish probable cause. The sup-

---

1. *People v. Defore,* 242 N.Y. 13, 150 N.E. 585 (1926).

pression motion was heard by Judge Daniels who, in the interim, had become circuit judge.[2] After hearing the evidence and reviewing the affidavit, the court held that the affidavit failed to provide sufficient information to support a finding of probable cause.[3] Despite its determination that the affidavit was defective, the trial court made additional findings and conclusions as follows:

"[T]hat the investigative officers who obtained the search warrant possessed, when the warrant was obtained, ample evidence to establish probable cause, but which evidence and facts were omitted from the affidavit in support of the search warrant in good faith by the investigative officers after consulting with and relying on the advice of the County Attorney and the Court having reviewed applicable law and having determined that the purpose of the exclusionary rule is to deter police misconduct rather than to punish errors of judges and/or prosecutors and the Court having determined that there is no evidence whatsoever to suggest that the investigative officers in this case are guilty of misconduct and the Court having carefully reviewed the decision of the Supreme Court of the United States in the case of *United States v. Leon*, 468 U.S. 897, 82 L.Ed.2d 677, 104 S.Ct. 3405 (1984), and the Court believing that the officers in the within case, as in *Leon, supra*, acted objectively reasonable and in good faith,

IT IS ORDERED that defendant's Motion to Suppress is overruled."

■ From the foregoing, it is apparent that we must now decide whether the Constitution of Kentucky requires suppression of evidence when, in the absence of police misconduct, the search warrant was erroneously issued by a judicial officer.

It would unnecessarily lengthen this opinion to engage in a detailed discussion of the exclusionary rule as applied by the courts of the United States and the Commonwealth of Kentucky. It is better, therefore, to begin with a recent decision of this Court, *Beemer v. Commonwealth*, Ky., 665 S.W.2d 912 (1984), which summarized the status of federal law and its required application by the states just prior to *United States v. Leon*. *Beemer* quoted at length and with approval from *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in which the Supreme Court abandoned the more rigorous test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and adopted in its place a "totality of the circumstances" test. This Court recognized its right to retain the *Aguilar* and *Spinelli* requirements as a matter of state constitutional interpretation, but refused to do so and overruled prior decisions which had applied the more onerous requirements. Pointedly, we said:

"They [our prior decisions] did not constitute an independent determination of Kentucky law but were compelled by federal law." *Beemer*, at 915.

*United States v. Leon* was rendered shortly after our decision in *Beemer v. Commonwealth* and since that time, *Leon* has been cited by this Court and the Court of Appeals, but never in a manner which could be said to have embraced or rejected its central holding. *Commonwealth v. Shelton*, Ky., 766 S.W.2d 628 (1989); *Commonwealth v. Walker*, Ky., 729 S.W.2d 440 (1987); *Coker v. Commonwealth*, Ky.App., 811 S.W.2d 8 (1991); and *Commonwealth v. Hubble*, Ky.App., 730 S.W.2d 532 (1987).

An examination of Section 10 of the Constitution of Kentucky and the Fourth Amendment to the Constitution of the United States reveals little textual difference. The language used is virtually the same and only the arrangement of the words is different. The absence of material difference between these constitutional provi-

---

**2.** Appellant has raised no issue as to the propriety of a judge reviewing, on motion for suppression, a search warrant earlier issued by that judge while sitting on another court.

**3.** For reasons which are not apparent, the affidavit and search warrant were not made part of the record on this appeal. As such, we are unable to independently review the sufficiency of the affidavit. As the factual findings of the trial court set forth in its order of March 20, 1987, are supported by substantial evidence, they are conclusive. RCr 9.78.

sions was recognized in *Benge v. Commonwealth*, Ky., 321 S.W.2d 247 (1959). We regard it as of paramount significance that neither the federal nor state constitution contains any mention of suppression of evidence as a possible remedy for a search and seizure violation. Suppression is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). See also *Young v. Commonwealth*, Ky., 313 S.W.2d 580 (1958).

A renowned Kentucky decision which required suppression of evidence obtained as a result of an unlawful *warrantless* search is *Youman v. Commonwealth*, 189 Ky. 152, 224 S.W. 860 (1920). Consistent with contemporary Fourth Amendment interpretation, *Youman* appears to have been grounded in prevention of harm to the administration of justice and prevention of disrespect for the constitution or laws. While the *ratio descendi* in *Youman* may be debatable in view of the sweeping language used, the practice it most severely denounced was when the police "break open the doors" and search without a warrant. In more recent times, while this Court's decisions have not been entirely consistent as to whether Section 10 and the Fourth Amendment are parallel, we have so held in *Rooker v. Commonwealth*, Ky., 508 S.W.2d 570 (1974), *Estep v. Commonwealth*, Ky., 663 S.W.2d 213 (1983), and *Collins v. Commonwealth*, Ky., 574 S.W.2d 296 (1978).

Having noted the similarity in the language of the Fourth Amendment and Section 10, and having recognized that neither discloses any express or implied remedy for violation, it is appropriate to review the remedy judicially created to determine whether its overriding purpose of deterring police misconduct is served by suppression of evidence when the affidavit in support of the search warrant is later determined to be insufficient. Heretofore it has been reiterated that this Court is under no obligation to follow the decisions of the Supreme Court of the United States as we interpret the Constitution of Kentucky. On the other hand, we should not ignore the logic and scholarship of that Court. As *United States v. Leon* is directly on point, it must be considered.

In *Leon*, the affidavit for the search warrant was presented to a California state court judge after an extensive drug investigation. Prior to judicial consideration, the affidavit was reviewed by one or more prosecutors and on submission, the court determined that a search warrant should issue. A motion for suppression of the evidence was thereafter filed and sustained on grounds that the affidavit revealed a stale transaction or was inconclusive. *Leon*, 468 U.S. at 903, n. 2, 104 S.Ct. at 3410, n. 2.

On review, the Supreme Court analyzed the Fourth Amendment and reached a number of conclusions which are significant here. The Court noted that admission of evidence obtained in violation of the Fourth Amendment did not result in a second constitutional violation and that the purpose of the exclusionary rule was to prevent future violations, not redress the instant violation. As such, the Court concluded that the deterrent effect of suppression of evidence should be weighed against the cost to society and the administration of justice by exclusion of otherwise trustworthy tangible evidence. On the question of deterrence, the Court noted that a police officer could not ordinarily be expected to question the probable cause determination of a judicial officer and concluded that once the warrant had been issued, the officer had done all in his power to comply with the law; that thereafter any error in the proceeding was a judicial error and not a police error which should be punished for the purpose of deterrence.

There is a popular but erroneous belief that the *Leon* Court eviscerated the exclusionary rule when the evidence is obtained pursuant to a search warrant. In fact, the Court held that the officer must have an objectively reasonable belief in the sufficiency of the warrant and the probable cause determination. If the affidavit contains false or misleading information, the

officer's reliance cannot be reasonable. Likewise, the Court retained the exclusionary rule and applied no presumption of validity in cases of abandonment by the judge of a detached and neutral role, and in cases where the officer's belief in the existence of probable cause is entirely unreasonable. Finally, suppression was retained as a remedy where the warrant is facially deficient by failing to describe the place to be searched or the thing to be seized. In sum, the court imposed a standard of objective reasonableness on police activity and retained the suppression remedy when police conduct falls below that standard. *Leon,* 468 U.S. at 922–924, 104 S.Ct. at 3420–3421.

Try as we may and with due respect for the prior decisions of this and other courts, we are unable to discover any deterrent effect in the suppression of evidence obtained pursuant to a search warrant when the police have acted in good faith. In some circumstances, the officer's affidavit may disclose all the information then possessed or, for reasons of investigative confidentiality, may disclose only a portion of the information. In either instance, the judicial officer to whom the affidavit is presented must determine whether the instrument is sufficient on its face to establish probable cause. On a determination of probable cause and issuance of a warrant, the transaction has been subjected to judicial scrutiny and the instrument which commands the search is on authority of the court and not the police. On a subsequent determination pursuant to a suppression motion that the affidavit was insufficient, the blame for the error falls on the judge. As the responsibility for determining whether a search warrant should issue rests with the judicial officer to whom the affidavit is presented, suppression of the evidence thereafter can have no deterrent effect upon police misconduct.

For purposes of the foregoing analysis, it has been assumed that the information in the officer's affidavit was true and complete. It has also been assumed that the judicial officer scrutinized the affidavit and, without resort to extrinsic facts, determined that it satisfied the requirements of Section 10. However, on motion for sup-

pression, if it should appear that the affidavit failed to describe with particularity the place to be searched and the thing to be seized, or was untrue, misleading, or that the judicial officer merely acted as a rubber stamp for the police, then public policy would require suppression as the essential purpose of the warrant would have been defeated. Whether by virtue of deceit or indifference, when it appears that the judicial function contemplated by Section 10 has not been discharged, suppression is available. In other circumstances, however, and when it appears that the affidavit was made in good faith but the warrant erroneously issued by virtue of judicial error, neither the Constitution nor sound public policy requires suppression of the evidence.

While a number of this Court's decisions have suppressed evidence seized pursuant to an invalid search warrant, an equal or greater number of our decisions have required suppression when the seizure was pursuant to a warrantless search. As fully stated hereinabove, deterrence of police misconduct is the primary, if not the only, legitimate objective of evidentiary suppression. It would be anomalous if courts, in their application of technical rules relating to search warrants, inadvertently encouraged the police to merely dispense with obtaining the warrant and attempt to later justify the warrantless search and seizure on grounds that the search was incident to a lawful arrest or that the contraband was in plain view or that some other exception to the warrant requirement was applicable. *Commonwealth v. Johnson,* Ky., 777 S.W.2d 876 (1989); *Mash v. Commonwealth,* Ky., 769 S.W.2d 42 (1989); and *Paul v. Commonwealth,* Ky., 765 S.W.2d 24 (1988). If deterrence of police misconduct be the objective, it is better served by application of a good faith standard for the admission of the evidence seized pursuant to a warrant than application of technical rules which encourage disrespect for the criminal justice system and disregard of the warrant requirement. Said otherwise, a technically defective search warrant obtained in good faith after proper application to a judicial officer is preferable to an

unsupervised and potentially fraudulent warrantless search. We therefore hold that application of a good faith exception to the warrant requirement, as articulated in *United States v. Leon, supra,* does not violate Section 10 of the Constitution of Kentucky.

■ On application of the foregoing to the case at bar, as found by the trial court it appears that while the affidavit failed to provide sufficient information to support the initial probable cause determination, it also appears that the investigative officer had sought and obtained the assistance of the county attorney and otherwise acted in good faith with respect to his efforts to obtain the search warrant. We are troubled that the judge to whom the affidavit was presented may have been provided information which did not appear on the face of the affidavit. It is the duty of the judicial officer to issue or deny the warrant based solely on the facts contained within the four corners of the affidavit. Here we must assume that the warrant was issued solely on that basis or that such was the judicial determination so far as the officer was aware. The error in the assessment of the affidavit was a judicial error and any error in receipt of information extrinsic to the affidavit was likewise a judicial error. The trial court candidly acknowledged its error in assessment of the affidavit but forthrightly found that the officer acted in good faith. Suppression of the evidence here could have no deterrent effect upon the police and the record fails to show any abandonment by the judge of his judicial function. It should not be overlooked that suppression of the evidence is not a remedy for judicial error as there is no constitutional right to suppression.

We recognize that this decision amounts to a departure from what some may regard as settled Kentucky Constitutional interpretation. However, as only this Court possesses the power to say finally what the Constitution of Kentucky means, save the right of the people to amend it, it is our duty to continually re-examine our prior decisions to prevent perpetuation of error. As such, and in view of the previous dominance of the federal courts of the law of search and seizure, we regard it as our duty to render a fresh interpretation of Section 10 of the Constitution of Kentucky even at the expense of some of this Court's prior decisions. *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815 (1932), Brandeis, J., dissenting; *Harmelin v. Michigan,* 501 U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); and *Commonwealth v. Wasson,* 842 S.W.2d 487 (Ky.1992), Lambert, J., dissenting.

This Court's decision in *Beemer v. Commonwealth, supra,* foretold our desire to restrain the suppression of evidence, a practice of judicial creation, under circumstances lacking substantial justification and in derogation of the truth-finding process. The sporting theory of criminal justice should be discouraged whenever it is encountered, but the substantive rights of parties accused of crime should be stubbornly enforced. For these reasons, we affirm as to the admission of the challenged evidence.

■ Appellant's claim that he was denied a speedy trial is unpersuasive. While the charges against appellant pended for nearly four years, the record discloses that appellant did virtually everything in his power to postpone being brought to trial. During the proceeding, he twice relieved his counsel, sought the recusal of two judges, filed numerous *pro se* motions, sought continuances, and engaged in other acts wholly inconsistent with any contention that he desired a speedy trial.

■ Appellant's claim of entitlement to a directed verdict is equally without merit. In addition to the accelerants discovered at appellant's residence, eyewitnesses placed him at the scene of the fire close in time to its ignition. There was testimony that appellant had said he intended to burn the club and evidence was presented that he was paid a substantial sum for setting the fire. Moreover, there was evidence that the fire alarm system had been disabled and appellant took steps to start the fire while the club was occupied by as many as thirty people. Under this Court's directed verdict standard found in *Commonwealth*

*v. Benham,* Ky., 816 S.W.2d 186 (1991), appellant's motion was properly denied.

■ Finally, we see no merit in appellant's double jeopardy argument. The convictions were for second degree arson (KRS 513.030(1)(a)) and first degree wanton endangerment (KRS 508.060). The evidence which supported the wanton endangerment conviction arose out of appellant's unsuccessful attempt to start the fire, while the arson conviction arose out of the successful effort about three hours later to burn the building. This case bears no resemblance to *Ingram v. Commonwealth,* Ky., 801 S.W.2d 321 (1990), in which we held that a single drug transaction could not support two separate criminal convictions. To hold otherwise would authorize one who undertook the commission of a crime to continue indefinitely and commit a string of wholly different crimes without being subject to any further criminal penalty. *Polk v. Commonwealth,* Ky., 679 S.W.2d 231 (1984). In *Cooley v. Commonwealth,* Ky., 821 S.W.2d 90 (1991), we said that the beginning point in a double jeopardy analysis is a determination of whether the Legislature intended to impose multiple or cumulative punishments for the same act or course of conduct. Even if appellant's acts constituted but a single course of conduct, we have no doubt of the legislative intent to punish wanton endangerment by attempting to burn an occupied building and the burning of the building as separate crimes.

For the reasons stated herein, appellant's convictions are affirmed.

LEIBSON, SPAIN and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which COMBS and REYNOLDS, JJ., join.

COMBS, J., dissents by separate opinion in which STEPHENS, C.J., and REYNOLDS, J., join.

STEPHENS, Chief Justice, dissenting.

The Kentucky Constitution, Section 10 states:

The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

The United States Constitution's Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Nothing in either Section 10 nor the Fourth Amendment provides for a good faith exception to the warrant requirement. It is well settled that the provisions of the Federal Constitution are a limitation on the powers of the federal government and not a limitation on the powers of the states. *See ante* at 685. The Federal Constitution creates a floor of rights below which no state can go. However, a state can rise above this floor and grant its citizens more rights than are secured by the Federal Constitution. While the United States Supreme Court has carved such an exception into the Fourth Amendment, we are not required to do so.

Like the entire Bill of Rights, the right to be free from unreasonable searches and seizures restrains the power of the government as a whole. They do not apply to one branch and exempt the others. One responsibility of all three branches is to ensure that constitutional rights are respected. Today the majority not only eradicates that responsibility, as applied to the judiciary, it has taken a step toward cracking the very foundation of the Constitution of Kentucky. Such a decision as set forth today only serves to further minimize the basic rights of the people of our great Commonwealth.

The highest court of Kentucky stated in *Benge v. Commonwealth,* Ky., 321 S.W.2d 247, 250 (1959), that

[i]n forbidding unreasonable searches and seizures, Section 10 of the Constitu-

tion of Kentucky made certain procedural requirements indispensable for lawful searches and seizures ... ... History, both before and after the adoption of the Fourth Amendment, upon which Section 10 of Kentucky's Constitution is based, has shown good police intentions to be inadequate safeguards for certain fundamental rights of man.

To be free from unreasonable searches is a fundamental right. Moreover, it is an absolute right. This right is ingrained in the very foundation of the Constitution of Kentucky. The framers of Kentucky's first Constitution sought to avoid the dangers of unlimited and unreasonable searches and seizures. They did so by incorporating section 9 of article 12 (which today is known as Section 10) into the 1792 Kentucky Constitution. This protection was placed in the Constitution by its framers for the same reason similar checks and balances were incorporated, to preserve to the people certain civil and political rights such as freedom of speech, due process of law, religious freedom and trial by jury. "These interdictions are and have been sheltering walls behind which the humble, uninitiated, but innocent citizen, may stand secure while the storms of bigotry and fanaticism beat thereon and waste away 'reason against resuming sway.'" Sampson, *Our Constitutional Prohibition against Unreasonable Searches and Seizures*, 13 Ky.L.J. 247, 259 (1925).

Before the sanctity of the home or a person can be invaded, it is the responsibility of the Commonwealth to prepare affidavits to substantiate and support a search warrant. The Commonwealth has the resources to ensure that the affidavits pass constitutional muster. It is not too great a burden to require the Commonwealth, with its vast resources, to be in compliance with the Constitution.

In the case at bar, the affidavit underlying the search warrant was defective in that it failed to establish probable cause. To reiterate, Section 10 states that "no warrant shall issue to search ... without

probable cause." It does not state "no warrant shall issue to search ... without probable cause *or* good faith intentions of the police." The clear and unequivocal language of Section 10 creates an absolute right. The majority creates an exception where no exception was ever intended to exist.

The majority declares the overriding purpose of the exclusionary rule to be the deterrence of police misconduct. *Ante* at 687. However, that is only one part of the rationale for the exclusionary rule. Another major function is to ensure compliance with the Fourth Amendment and with Section 10. With the majority's decision, any incentive on behalf of the police to devote great care and attention to providing sufficient information to establish probable cause is lost. Now, such attention is replaced with a mechanical assumption that the document signed by a magistrate comports with the Constitution. Today's decision will encourage representatives of the Commonwealth to become slovenly, less careful and less prepared in their work. We have been asked to balance the rights of the protections of Section 10 against the rights of the Commonwealth to enforce the laws. Because of the Commonwealth's resources and due to the fundamental right guaranteed by Section 10, the balance should have fallen in favor of the rights of individuals to be free from unreasonable searches and seizures. Instead, the majority has modified Section 10 by judicial fiat and in so doing has minimized a basic right established by the framers of Kentucky's Constitution.

COMBS and REYNOLDS, JJ., join this dissenting opinion.

COMBS, Justice, dissenting.

Respectfully, I dissent. Few admire Cardozo more than I.[1] Nevertheless, I believe the issue is more accurately stated as whether the government may violate the Constitution, and then compound the wrong by using ill-gotten evidence to in-

---

**1.** "Cardozo defined the issue here as whether '[t]he criminal is to go free because the consta-    ble has blundered.'" *Ante* at 685.

criminate the very victim of its trespass. Cardozo's statement of the issue begs the question. It presumes to characterize the appellant as a "criminal," whereas the real question is the validity of a conviction obtained not pursuant to the law of the land, but in direct contravention of it.

Section 10 of the Constitution of Kentucky contains an absolute mandate and an absolute prohibition:                  ·

[1] The people *shall be secure* in their persons, houses, papers and possessions, from unreasonable search and seizure; and

[2] *no warrant shall issue* to search any place or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

(Emphasis added.) Another applicable mandate is found in Section 26: "[E]verything in this Bill of Rights ... shall forever remain inviolate...." It is given in this case that all three of those directives were transgressed: the judge issued the warrant without probable cause; the police conducted a per se unreasonable search and seizure; and thus two arms of government violated the Bill of Rights. Yet we, defenders of the Constitution, and of the rights which it guarantees, hold that the victim has no redress in the criminal justice system, because the government acted in "good faith."

First, it may be observed that the language of the Constitution is categorical, admitting of no exceptions or qualifications. While consensual searches, warrantless searches incident to lawful arrest, and the plain view doctrine, for example, may be reckoned as constitutional because not unreasonable, a search conducted pursuant to a warrant void for want of probable cause is patently unconstitutional. As the majority points out, the Constitution does not expressly provide a remedy to an individual whose rights have been violated, which is not surprising when one considers that the Constitution intends that they *shall not be* violated. If we must infer a footnote to Section 10, the Constitution will much more readily accommodate one saying that evidence seized in violation of constitutionally protected rights shall be sup-

pressed, rather than another, the majority's, saying in effect that the Bill of Rights protects one only until his/her rights are violated in "good faith" (a curious reading of the phrase "shall forever remain inviolate").

Our majority, while announcing independence, has nevertheless adopted in toto the view of the United States Supreme Court expressed in the decision of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). While I do not "ignore the logic and scholarship" of the United States Supreme Court (*ante* at 687), neither do I doubt its fallibility, nor blink the critical eye when called to apply the Kentucky Constitution.

The major premise of *Leon*, and of our majority opinion, is that exclusion of unconstitutionally seized evidence is appropriate only when there is "a police error which should be punished for the purpose of deterrence." (*Ante* at 687.) According to the majority, "Suppression is a 'judicially created *remedy* designed to safeguard [constitutionally guaranteed] rights *generally*, through its deterrent effect, rather than a *personal* constitutional right of the party *aggrieved.*'" (*Ante* at 687, quoting *Leon*, 468 U.S. at 906, 104 S.Ct. at 3412, itself quoting *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); emphasis mine.) It is thus acknowledged that suppression, when ordered, is a "remedy" afforded to an individual defendant "aggrieved" by an unconstitutional invasion of his rights. Yet the logic of *Leon* is to apply the Constitution selectively, only where the remedy can "pay its way by deterring official unlawlessness [sic]." *Illinois v. Gates*, 462 U.S. 213, at 257–258, 103 S.Ct. 2317, at 2342, 76 L.Ed.2d 527 (1983), White, J., concurring. By this logic, the individual's right, the preeminent concern of the Constitution, is relegated to the background, superseded by inquiry into the "cost to society and administration of justice" (*ante* at 687). Sections 10 and 26 of our Constitution become, rather than the supreme law, "technical rules relating to search warrants" (*ante* at 688). And official lawlessness which supposedly

cannot be deterred is not remedied, but condoned.

The logic of this logic escapes me. I read nothing in the Constitution about "general" as opposed to "personal" rights. The Constitution unquestionably aims to guarantee the personal rights of every individual. What better way to safeguard rights generally? The Bill of Rights is less concerned with "punishing" the police than with guaranteeing an individual's security from unlawful intrusion. The focus of the Constitution is upon the right of the citizen; that right is absolute, and is not diminished because violated in "good faith." The remedy of exclusion of unconstitutionally seized evidence goes far toward vindicating the right, and restoring the security which has been breached. Admission of the evidence, it is said, is not a second constitutional violation (*ante* at 687). I suggest that it is, at least, an extenuation of the initial violation, further invading the right to be *secure* from unreasonable searches and seizures. What better way to *secure* this individual from an unconstitutional search, once accomplished, than to limit the resulting harm? Why add injury to injury by admitting against him evidence which would not have been available absent the constitutional violation?

The "cost to society" of the exclusionary remedy, if relevant at all, is the same social cost imposed by the Constitution, which requires probable cause, not "good faith." Sections 10 and 26 clearly intend that a person shall remain secure, even in his/her crimes, until probable cause is established. Against this legitimate cost, one might weigh the cost of today's result, which vitiates a fundamental individual right, and erodes the Constitution.

I am further dismayed by the paradoxical view that sanctioning a search made without probable cause will promote the administration of *justice*, the very foundation of which is the Constitution. On a more mundane level, today's result invites the police to seek (and obtain) warrants on less than probable cause, and invites judges to issue such warrants liberally, on the theory that probable cause doesn't matter anymore. According to the logic of *Leon*, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon, supra,* 468 U.S. at 916, 104 S.Ct. at 3417. I suggest that the remedy is designed to preserve constitutionally guaranteed rights against unlawful invasion by *either* police *or* judges. According to *Leon, supra,* at 917, 104 S.Ct. at 3417, "Judges and magistrates are not adjuncts to the law enforcement team." I believe that they are adjuncts to the government created by the Constitution, are prohibited from issuing warrants without probable cause, and are sworn to uphold the Constitution, which guarantees freedom from unreasonable searches and seizures. Judges and magistrates are sworn to protect individual rights, not to render them meaningless by admission of evidence obtained as a result of the judge's own violation of the Constitution. Section 10 of the Constitution of Kentucky, like the Fourth Amendment of the United States Constitution, prohibits the ancient and oppressive practice of issuing general warrants, i.e., warrants grounded on less than probable cause. *See Leon,* 468 U.S. at 971, 104 S.Ct. at 3451, Stevens, J., dissenting. Today we cultivate the long-dormant seed of the general warrant. Our harvest will not, I think, please the palate.

STEPHENS, C.J., and REYNOLDS, J., join in this dissenting opinion.