Michael HENSLEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–CA–002501–MR.

Court of Appeals of Kentucky.

Oct. 12, 2007.

As Modified Feb. 8, 2008.

573

Euva D. May, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; NICKELL and WINE, Judges.

*OPINION*

NICKELL, Judge.

Michael Hensley (hereinafter "Hensley") entered a conditional guilty plea pursuant to Kentucky Rules of Criminal Procedure (RCr) 8.09 in the Knox Circuit Court to the amended charge of attempting to manufacture methamphetamine [1] and received

---

1. Hensley was originally charged with manufacturing methamphetamine, Kentucky Revised Statutes (KRS) 218A.1432, and posses-

sion of a controlled substance in the first degree, KRS 218A.1415. Pursuant to plea negotiations, the manufacturing charge was

a sentence of seven and one-half years. Within his guilty plea, Hensley reserved the right to appeal the circuit court's denial of his motion to suppress evidence. It is from this denial that he appeals to this Court. For the following reasons, we reverse and remand to the Knox Circuit Court.

On September 5, 2004, Officer Basil R. Hodge of the Corbin Police Department submitted an affidavit for a search warrant for the residence of Hensley and Shawna D. Wilson[2] located at 8458 Kentucky Highway 1232, Corbin, Knox County, Kentucky, which provided that "[o]n Sunday, September 5, 2004[,] a reliable confidential informant took this officer and Brian Reams to the residence. Upon speaking to [Ms. Wilson] you could smell a strong smell of ether." The affidavit also stated that Officer Hodge had "[r]ecieved [sic] several complaints of possible production of methamphetamine." Because Officer Hodge could not locate a judge in Knox County, a search warrant was obtained from the Whitley County district judge. Execution of the search warrant by officers resulted in the seizure of numerous items used in the manufacture of methamphetamine.

Thereafter, on January 14, 2005, Hensley was indicted by a Knox County grand jury for manufacturing methamphetamine, and possession of a controlled substance in the first degree. Hensley filed a motion to suppress the evidence seized pursuant to the search warrant, and a suppression hearing was held on June 10, 2005. Hensley argued that the search warrant was based on an affidavit that was facially deficient and lacked probable cause. In an

order entered on August 12, 2005, the trial court denied the motion to suppress.

Subsequently, on September 9, 2005, Hensley entered a conditional guilty plea to an amended count of attempting to manufacture methamphetamine, reserving his right to appeal the trial court's denial of his motion to suppress. Hensley was sentenced on October 14, 2005, to seven and one-half years in prison. This appeal followed.

The standard for our review is set forth in *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Under that decision, a trial court's determination regarding a suppression motion based on an allegedly illegal search is subject to a two-pronged analysis. First, historical facts should be reviewed for clear error and the facts are deemed to be conclusive if supported by substantial evidence. Second, determinations of reasonable suspicion and probable cause are mixed questions of law and fact and are therefore subject to *de novo* review. *See also Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky.App.2003). Further, we are bound to give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699, 116 S.Ct. 1657.

In the case at bar, Hensley contends the circuit court erred in denying his suppression motion because the affidavit accompanying the request for a search warrant did not establish sufficient probable cause to support the warrant's issuance, and that the so-called "good faith exception" set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), could not save the resulting search. He

---

amended to attempted manufacturing methamphetamine, KRS 218A.1432/KRS 506.010, and the possession charge was dismissed.

2. We note the affidavit listed only the property address and its latitude and longitude. It did not include the names of any persons located at the residence nor did it describe the property.

further contends the trial court erred in failing to strike portions of the affidavit that were shown to be erroneous as required by *Franks v. Delaware*, 442 U.S. 928, 99 S.Ct. 2871, 61 L.Ed.2d 304 (1979). Pursuant to *Ornelas*, we shall first address the historical facts for clear error and then consider the circuit court's determination of reasonable suspicion and probable cause.

The historical facts are relatively simple and were presented at the suppression hearing through the testimony of Officer Hodge. He testified he had previously received complaints about the illicit manufacture of methamphetamine occurring in Knox County, Kentucky, somewhere in the general area of Hensley's residence. He had received no specific information identifying which residence was hosting the suspected illegal activities. On or about September 4, 2004, Officer Hodge solicited information from a confidential informant he considered reliable based upon past dealings regarding the manufacture of methamphetamine at a specific location. The informant led Officer Hodge and Reams[3] to Hensley's residence where the officers initiated a conversation with an unknown female who answered their knock at the front door. Officer Hodge smelled an odor he described as ether[4] emanating from the residence. His request for consent to search the residence was denied. Officer Hodge then left to secure a search warrant for the residence, while other officers remained at the dwelling.

Officer Hodge was unable to locate a Knox County judge, but he was able to contact a judge from neighboring Whitley County, fax the affidavit to her, and secure the search warrant based upon the affidavit he had previously prepared. The affidavit stated in pertinent part:

> On the 5TH day of SEPTEMBER, 2004, at approximately a.m./p.m., affiant received information from/observed: RECIEVED [sic] SEVERAL COMPLAINTS OF POSSIBLE PRODUCTION OF METHAMPHETAMINE.

> Acting on the information received, affiant conducted the following independent investigation: ON SUNDAY SEPTEMBER 5TH 2004 A RELIABLE CONFIDENTIAL INFORMANT TOOK THIS OFFICER AND BRIAN REAMS TO THE RESIDENCE. UPON SPEAKING TO THE WOMAN YOU COULD SMELL A STRONG SMELL OF ETHER.

This language was the only information set forth in the affidavit regarding probable cause for the issuance of the search warrant. Based upon this information, the search warrant was issued at approximately 3:15 a.m. on September 5, 2004. Officer Hodge returned to the residence, and upon execution of the search warrant numerous items were recovered which are commonly associated with the manufacture of methamphetamine. Hensley was located at the residence and placed under arrest for manufacturing methamphetamine and possession of a controlled substance. A similar version of these undisputed facts was set forth by the trial court in its order overruling Hensley's motion to suppress. We see no clear error in the trial court's written findings, and as they are sup-

---

3. While it is difficult to determine with precision from the record, it appears other officers may have also accompanied Officer Hodge and Reams to the residence, possibly from the Laurel County Drug Task Force.

4. In his testimony, Officer Hodge stated he and Reams had discussed the odor and "decided that the best way to describe it was as ether." He later testified the smell was similar to that of "starter fluid like you would use on a tractor."

ported by substantial evidence, these findings are conclusive.

■ Next, pursuant to *Ornelas,* and in order to address Hensley's first argument, we must look to the trial court's determination of probable cause. In the case *sub judice,* the trial court, citing *United States v. Weaver,* 99 F.3d 1372, 1376 (6th Cir. 1996), specifically found the district judge who issued the warrant had properly done so based upon the information received which "provided a substantial basis for concluding that a search would uncover evidence." The trial court went on to indicate that it was not particularly satisfied with the contents of the affidavit, and it was "inclined to find that the affidavit in this instance failed to provide adequate cause to support a search warrant." However, the evidence would not be suppressed as the search was saved by the so-called "good faith exception" to the exclusionary rule set forth in *Leon, supra.* Although the trial court took to task nearly every statement contained in Officer Hodge's affidavit as being deficient, it ultimately determined that under the "totality of the circumstances" the district judge had adequate grounds upon which to find probable cause, and Officer Hodge thereafter properly relied on what he believed to be a valid, constitutional search warrant issued by a neutral and detached magistrate. On both counts, we disagree.

The United States Supreme Court has set out the proper standard for magistrates to utilize in determining whether probable cause to issue a search warrant exists, as well as the standard for appellate review of such determinations. In *Illinois v. Gates,* 462 U.S. 213, 238–9, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the Supreme Court, in adopting a "totality of circumstances" test, held:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.

(citation omitted) (alterations in original). *See also Beemer v. Commonwealth,* 665 S.W.2d 912, 914–915 (Ky.1984) (quoting and adopting above language as applicable law in the Commonwealth).

In the case *sub judice,* "all the circumstances" listed in Officer Hodge's affidavit constituted a wholly insufficient basis upon which to find probable cause. The affidavit contained nothing more than conclusory allegations of the type condemned in *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) (sworn statement that an affiant "has cause to suspect and does believe" that illegal substances are present at a particular location held to be insufficient to support issuance of a search warrant).

■ When requested to issue search warrants, judges may not simply act as rubber stamps for the police and merely ratify the bare conclusions of others, nor may they consider information outside the affidavit. *See Crayton v. Commonwealth,* 846 S.W.2d 684, 688–9 (Ky.1992) (judicial officers must issue or deny warrants solely on facts within four corners of affidavit). It is clear to us that Officer Hodge's affidavit does not pass constitutional muster as it contained no substantial basis for the district judge's determination that probable cause existed to issue a search warrant.

■ Having held the affidavit to have been so deficient as to have provided no basis for the issuance of the search warrant, we further hold the trial court erred in applying the "good faith exception" to the exclusionary rule in denying the motion to suppress the seized evidence. The dual purpose of the exclusionary rule has historically been to deter police misconduct by excluding evidence obtained in violation of the Fourth Amendment to the U.S. Constitution, as well as to encourage compliance with the constitutional protection against unreasonable searches and seizures. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), *Young v. Commonwealth,* 313 S.W.2d 580 (Ky.1958). The exclusionary rule was made binding upon the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), by application of the Due Process Clause of the Fourteenth Amendment. We further note that the language found in the Fourth Amendment is nearly identical to that used in Section 10 of the Kentucky Constitution, thus making federal caselaw analysis particularly relevant to our decision.

Historically, a violation of the Fourth Amendment required the automatic suppression of the evidence seized. However, in *Leon, supra,* the Supreme Court reversed this *per se* suppression rule and added what we know today as the "good faith exception." The Supreme Court in *Leon* held an officer's reasonable reliance on a search warrant issued by a neutral and detached magistrate could save evidence from being excluded when the warrant was later determined to be deficient for lack of probable cause. However, the Court went on to add that if the magistrate had been misled with false information, any evidence seized should be suppressed as the officer's reliance on the search warrant could not be seen as reasonable. Further, if the magistrate abandons the "detached and neutral" judicial role or if the officer's belief in the existence of probable cause was wholly unreasonable, suppression of evidence remains available as a remedy. Upon a careful review of the record, it is clear the magistrate was misled by false information provided by Officer Hodge, and the officer's later reliance on the resultant search warrant was wholly unreasonable.

At the suppression hearing, Officer Hodge testified that contrary to the allegations stated in his affidavit, he had not, in fact, received any complaints regarding possible methamphetamine manufacturing *on September 5, 2004.* He was uncertain as to when he may have actually received the complaints. He further testified he was aware of this fact when he prepared the affidavit and took no affirmative action to inform the district judge of the error. The trial court ruled that such inaction was merely an act of negligence by Officer Hodge. Further, the trial court found that even in light of the inadequacies of the affidavit, the totality of the circumstances created grounds for "good faith" reliance on the warrant sufficient to save the fruits of the search. Again, we disagree.

While nothing in the record specifically indicates Officer Hodge intentionally attempted to fraudulently obtain the instant search warrant, his failure to include with specificity any reasonable indication of probable cause in the affidavit went beyond mere negligence. The falsity of some of the information provided makes the officer's actions even more egregious, especially in light of his testimony at the suppression hearing that he was aware of the untruthfulness of his statements when they were made. The affidavit submitted by Officer Hodge included only a general statement alleging knowledge of the possibility of illegal conduct. The affidavit is silent as to any other indicia of probable

cause to believe contraband or other evidence of illicit activity would be uncovered at the residence.

Further, the only listed result obtained from Officer Hodge's independent investigation was "a strong smell of ether." While ether may be a chemical used in the production of methamphetamine, the affidavit fails to so state, nor does it recite any training Officer Hodge may have had which would indicate he had knowledge of the link between various chemical compounds and the manufacture of methamphetamine. Further, and perhaps most troubling, our review of the record indicates no ether or substances containing ether were located on the premises, nor were any empty containers located which had once held ether, thus calling into question the veracity of this allegation. Officer Hodge's testimony that he and Reams "decided" to describe the smell as ether gives us further reason for pause. Phantom smells with no palpable source and discussions of how best to describe them conjure the perception of officers attempting to invent reasons sufficient to sustain the issuance of a search warrant. While we will not question Officer Hodge's statement that he and Reams detected some odor as they approached Hensley's door, the record provides us with little faith in the veracity of the assertion in his affidavit that they smelled a strong odor of ether. The trial court relied heavily on Officer Hodge's independent investigation, specifically his discovery of the smell of ether, in its decision to save the fruits of the search, a reliance we believe was misplaced. Clearly, the questionable veracity and reliability of Officer Hodge's assertion places a cloud upon his "good faith" reliance on the search warrant.

Although Officer Hodge may have had additional pertinent and probative information regarding criminal activity at Hensley's residence, it was not reflected in the affidavit supplied to the district judge. As previously stated, only information contained in an officer's affidavit may be relied upon by the district judge in deciding whether to issue a search warrant, and it is entirely reasonable to impute knowledge of this requirement to law enforcement officers. Further, the false information included in Officer Hodge's affidavit was clearly relied upon by the district judge as no other information of value was given. We cannot hold the issuing judge was not misled by this misinformation. Thus, in light of the grossly deficient affidavit and the untruths contained therein, we cannot hold Officer Hodge relied in good faith on the decision of a neutral magistrate.

■ Hensley finally contends the trial court erred in failing to strike the portions of Officer Hodge's affidavit that were shown to be erroneous, false, or misleading pursuant to *Franks, supra.* However, our previous holdings in this opinion render this argument moot and further discussion of the *Franks* issue is unwarranted.

The minimal amount of information provided in Officer Hodge's affidavit and the material misstatements contained therein appear to be an example of the fulfillment of Chief Justice Stephens' prophecy found in his dissenting opinion in *Crayton, supra* at 691, that with the adoption of the "good faith exception" to the exclusionary rule

> any incentive on behalf of the police to devote great care and attention to providing sufficient information to establish probable cause is lost.... Today's decision will encourage representatives of the Commonwealth to become slovenly, less careful and less prepared in their work.

If the courts sanction such subpar performance by law enforcement officers of the Commonwealth, confidence in the judicial system will be lost and all citizens

within our borders will suffer. The courts, as defenders of the Constitution and the rights afforded thereunder, should be loathe to accede to such lowered standards or knowingly participate in any harm to the Commonwealth, as those basic rights must be jealously guarded.

While it is difficult to suppress the results of a search which are clearly indicative of heinous illegal activity, "[a] search prosecuted in violation of the Constitution is not made lawful by what it brings to light." *Byars v. Untied States,* 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1927). Although it has been said that "[t]he criminal is to go free because the constable has blundered," *People v. Defore,* 242 N.Y. 13, 150 N.E. 585 (1926) (Cardozo, J.), we are also mindful that to maintain judicial integrity "the criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own law, or worse, its disregard of the charter of its own existence." *Mapp, supra,* 367 U.S. at 659, 81 S.Ct. at 1694.[5]

Therefore, for the foregoing reasons, the order of the Knox Circuit Court denying Hensley's motion to suppress is reversed and this cause is remanded for further proceedings consistent with this opinion.

ALL CONCUR.

---

**5.** Nothing in this opinion should be read to impact Hensley's concurrent twenty-year prison sentence resulting from his conviction of a similar crime in Whitley County. Although affirmed by the Supreme Court on direct appeal, that conviction has recently been appealed to this Court on a collateral attack. Our decision today is of no import to that wholly separate conviction and appeal.