**COMMONWEALTH of Kentucky, Appellant,**

v.

**Jason Thomas BALDWIN, Appellee.**

**No. 2004–CA–002528–MR.**

Court of Appeals of Kentucky.

Feb. 24, 2006.

Discretionary Review Denied by Supreme Court Sept. 13, 2006.

---

Gregory D. Stumbo, Attorney General of Kentucky, George G. Seelig, Assistant Attorney General, Frankfort, KY, for appellant.

Marcus S. Carey, Erlanger, KY, for appellee.

Before JOHNSON, KNOPF, and VANMETER, Judges.

## OPINION

VANMETER, Judge.

The Commonwealth appeals from an order entered by the Boone Circuit Court granting the motion of appellee Jason Thomas Baldwin to suppress all evidence obtained from a search which was conducted pursuant to a search warrant. For the reasons stated hereafter, we reverse and remand for further proceedings.

During the early morning hours of October 15, 2002, Boone County Deputy Sheriff Steve Larson completed an affidavit in support of a request for a search warrant of Units 825, 826 and 828 of the Mt. Zion Storage facility in Boone County. Larson, who had been a member of the Sheriff's Department for ten years, stated in pertinent part as follows:

> On the 5th day of September, 2002, at approximately 4:30 p.m. affiant received information from Brian Cochran of the Northern Ky Drug Strike Force that a reliable confidential informant had informed Cochran that a white male was cooking meth in the storage units at Mt[.] Zion Storage after dark. Affiant then went to the storage units at 10:45 p.m. Sept. 5, 2002 and saw two white males come out of a unit jumped into a truck and left upon realizing someone was outside the building.
>
> Acting on the information received, affiant conducted the following independent investigation: Affiant ran the plates from the truck and found the truck registered to Jason Baldwin. Affiant on Sept. 6, contacted Cochran with this information & Cochran verified that Jason Baldwin was the person named by the informant. On Oct. 14, 2002, at 11:47 p.m. Affiant saw the truck earlier identified as that of Jason Baldwin parked in front of unit 826. Affiant called for assistance and while waiting for other officers and a drug sniffing dog to arrive, the door of 825 opened and two white males and a white female came out. Affiant and other officer, Pete Schierloh, asked for identification & were given drivers licenses identifying one male as Jason Baldwin who claimed ownership of Units 825, 826 and 828. Tim Adams and his dog Niko came to the scene. Niko is a certified narcotics dog. Niko indicated that there were drugs in 825 after being walked by four other units which the dog did not identify as containing drugs.
>
> Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Search Warrant, based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to order of said court.

Within thirty minutes after the affidavit was signed, a Boone District Judge issued a search warrant for "Units 825, 826 and 828 of Mt. Zion Storage" based on a find-

ing of "probable and reasonable cause ... as set out in [Larson's] affidavit attached hereto and made a part of hereof as if fully set forth herein[.]"

The search warrant immediately was executed, and drugs and numerous other items were seized from Unit 825. Baldwin was charged with possessing marijuana and drug paraphernalia, as well as with firearm-enhanced charges of attempting to manufacture methamphetamine and possessing a first-degree controlled substance.

The circuit court denied Baldwin's first suppression motion, which challenged the propriety of Larson's entrance onto the storage unit property. In this subsequent pretrial motion to suppress, Baldwin challenged the qualifications of the drug detection dog, Niko. During a hearing Niko's handler testified regarding his and Niko's training and certification, as well as Niko's estimated 95% accuracy. However, Baldwin's expert witness testified about training detection dogs and concluded, based on a paper review of Niko's training records, that Niko was unreliable. The expert indicated that although various performance standards exist within the industry, there are no Kentucky or national standards as to drug detection dog training. The circuit court granted the motion to suppress in a 39–page order which both analyzed drug detection dog standards and certification, and recommended a balancing test for analyzing future cases. The court found:

6) Considering the use of Niko, a dog who was not certified by an independent certified field test by a recognized testing organization, the fact that the handler of Niko was not a certified dog handler, the fact that Niko falsely alerted on two out of three alerts on the day in question, we find that a standardless

and unconstrained discretion was left to the handler to determine the reliability and training of Niko and this fails the probable cause test.

The court concluded that although Kentucky has no certification standard, "our body of law does have requirements for the introduction of evidence which are binding, and which regulate the introduction of evidence." The court further found that Niko's use

to establish probable cause for the issuance of a search warrant was insufficient pursuant to the "totality of the circumstances test" ... that the reliability and veracity of the informant was not proven; that the results produced by Niko failed the review conducted by this court in compliance with *Daubert v. Merrell Dow Pharmaceuticals* [,] 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); that the affiant to the search warrant affidavit gave materially misleading information to the issuing District Court judge who therefore had no substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited; that a standardless and unconstrained discretion was left to the handler in the use of Niko to establish probable cause for the issuance of the search warrant; that the search was therefore an unconstitutional search in violation of the Fourth Amendment.

This appeal followed.

■■■■ Probable cause for a search requires something more than a bare suspicion but less than what is needed to support a conviction.[1] As stated in *Illinois v. Gates*,[2] the totality of the circumstances

---

1. See *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Brine-gar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

2. 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76

test should be used to establish whether probable cause exists, and the issuing magistrate's test

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for … conclud[ing]" that probable cause existed. *Jones v. United States, supra*, 362 U.S., at 271, 80 S.Ct., at 736.

Further, the expertise and experience of the law enforcement officer involved in the matter may be a relevant consideration in the determination of probable cause.[3] A mere statement that an informant is reliable, without more, is insufficient in and of itself to establish the informant's credibility for purposes of issuing a search warrant.[4] However, information from an informant may be corroborated by an independent police investigation to establish probable cause. A court's findings of probable cause relating to the issuance of a search warrant should be given great deference and should be upheld absent an arbitrary exercise of discretion.[5] The issuance of a search warrant must be upheld so long as there was a " 'substantial basis' for determining that a search would uncover evidence of wrongdo-

ing[.]"[6] As recently stated by this court in *Baltimore v. Commonwealth*,[7]

> [b]oth the reasonable suspicion and probable cause objective standards are flexible concepts to be applied in a commonsense manner based on the totality of the circumstances in each case. In determining the totality of the circumstances, a reviewing court should not view the factors relied upon by the police officer(s) to create reasonable suspicion in isolation but must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training.

Kentucky has adopted the standard of review set out by the *United States Supreme Court in Ornelas v. United States* [517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)]. Under that approach, the decision of the circuit court on a motion to suppress based on an alleged illegal search following a hearing is subject to a two-part analysis. First, factual findings of the court involving historical facts are conclusive if they are not clearly erroneous and are supported by substantial evidence. Second, the ultimate issue of the existence of reasonable suspicion or probable cause is a mixed question of law and fact subject to de novo review. In conducting this analysis, the reviewing court must give due weight to inferences drawn from the facts by the trial court and law enforce-

L.Ed.2d 527 (1983). *See also Lovett v. Commonwealth*, 103 S.W.3d 72 (Ky.2003); *Beemer v. Commonwealth*, 665 S.W.2d 912 (Ky.1984).

3. *See Dunn v. Commonwealth*, 689 S.W.2d 23, 28 (Ky.App.1984).

4. *Buchenburger v. Commonwealth*, 482 S.W.2d 747 (Ky.1972), *overruled on other* grounds by *Beemer v. Commonwealth*, 665 S.W.2d 912 (Ky.1984).

5. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir.2004).

6. *Id.* at 937.

7. 119 S.W.3d 532, 539 (Ky.App.2003).

ment officers and to the circuit court's findings on the officers' credibility.

(Footnotes omitted.)

■ Here, as noted above, the affidavit for the search warrant indicated that a Drug Strike Force officer advised Larson that he had been informed by a "reliable confidential informant" that a white male was cooking methamphetamine after dark in the Mt. Zion storage units. When Larson went to the named storage units that night, he saw two males exit Unit 825 and leave in a white truck which was verified as being registered to Baldwin, whom the Drug Strike Force officer confirmed was the person named by the confidential informant. Some five weeks later, the dog search took place and the search warrant was issued after Larson conducted an independent investigation and again observed the truck parked in the area of Unit 825.

While the informant's information alone may have been insufficient in and of itself to support the issuance of a search warrant, sufficient probable cause was established when that information was corroborated by the independent police investigation. More specifically, the initial investigation corroborated the informant's tip that Baldwin would be at a particular location after dark, and Baldwin then was observed at the same location late at night some five weeks later. Further, additional corroboration was provided when Niko alerted to Unit 825.

As noted above, the circuit court's duty when reviewing the issuance of the search warrant was "simply to ensure that" the district court had a "substantial basis" for concluding that probable cause existed for the issuance of the search warrant.[8] Nevertheless, the circuit court found that Lar-

son's affidavit statement, that Niko "indicated that there were drugs in 825 after being walked by four other units which the dog did not identify as containing drugs", was contradicted by testimony from the dog handler. According to the trial court,

[the dog's handler] testified that the dog had actually hit on *three* storage units and *two of those were later found not to contain drugs.* This incorrect statement in the search warrant affidavit was not explained to the court, but certainly improperly enhanced the impression of the dog's ability.

However, given the handler's specific testimony during the suppression hearing that Niko "ran" seven or eight units and indicated the presence of drugs in three units in the same area as Unit 825, we are not persuaded that the court's conclusion was warranted since the statements that the dog walked by four units before hitting on one, and that the dog hit on three units, are not inconsistent with the statement that the dog "ran" seven or eight units and indicated the presence of drugs in three. This is especially true since it was undisputed that drug detection dogs can detect residual drug smells long after the drugs themselves are no longer present in an area, that the units ventilated into one another, and that, even though drugs were found only in Unit 825 and outside under a vehicle, appellee rented Units 826 and 828 in addition to Unit 825.

Moreover, we are not persuaded by the circuit court's rejection of Larson's affidavit statement that Niko was "a certified Narcotics dog." Although the court found that Niko's results "failed the review conducted by this court in compliance with *Daubert v. Merrell Dow Pharmaceuticals,*"[9] *Daubert* clearly is inapplicable as

---

**8.** *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

**9.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

the standard established therein pertains to the admissibility of scientific, technical, or other specialized knowledge as evidence at trial, rather than to the lesser probable cause determination [10] of whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." [11] Further, regardless of how worthy the concept of state or federal certification of drug detection dogs and handlers might be, the fact remains that such certification did not exist at the time of the search below. We simply cannot agree with the circuit court's judicial imposition of such certification requirements by means of the "Shaw Balancing Test for Use of Narcotic Detection Dogs" which it unilaterally created and applied to the situation herein.

Contrary to the circuit court's conclusion, a review of the totality of the circumstances shows that there was more than a substantial basis to establish that drug evidence would be found in the place named in the affidavit. An alleged confidential informant provided information regarding possible drug activity, an independent investigation was conducted by law enforcement officers, and Niko alerted on the storage unit where the drugs were found. While any one of those three elements might have been inadequate, in and of itself, to provide probable cause for the issuance of the search warrant, when viewed as a whole those elements provided more than enough evidence to show that "a substantial basis" [12] existed for the search. We therefore must conclude that the district court did not err by issuing a warrant to search the premises, and that the circuit court erred by finding that the search violated the Fourth Amendment and by granting appellee's motion to suppress the results of the search.

The court's order is reversed and this matter is remanded for further proceedings.

ALL CONCUR.

10. Unlike the situations described in cases such as *Pedigo v. Commonwealth,* 103 Ky. 41, 44 S.W. 143 (1898), and *Smith v. Commonwealth,* 563 S.W.2d 494 (Ky.App.1978), where bloodhounds were used for the tracking of trails from the scenes of crimes and the identification of alleged perpetrators, here the dog was used only to determine whether there was evidence of criminal activity at a particular location.

11. *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

12. *Combs,* 369 F.3d at 937.