RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1388-MR

MARION BUELL, JR.                                            APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. 18-CR-00168-002

COMMONWEALTH OF KENTUCKY                          APPELLEE

AND

NO. 2021-CA-0102-MR

YUSEF KWAN WESLEY                                       APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.      HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. AND 18-CR-00168-001

COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND JONES, JUDGES.

CALDWELL, JUDGE: The Appellants challenged the legality of a search of a vehicle conducted as a part of a drug operation in Lexington in Fayette Circuit Court. After reviewing the trial court's order denying the motion to suppress, the briefs of the parties, and the record below, we affirm.

## FACTS

On December 18, 2017, members of the Lexington Police Department C.L.E.A.R.[1] Unit were assisting the Narcotics Unit. Narcotics Unit Detective Todd Hart (Hart) had received information from a qualified confidential informant that Yusef Wesley (Wesley) would be returning to Lexington from Detroit with a large quantity of heroin. The informant had provided information concerning the time Wesley would be leaving Detroit and the make, model, and license plate of the rental vehicle in which he would be found.

Hart had requested assistance from marked police units because he was hoping that the rental vehicle could be pulled over for a routine traffic violation. Perhaps then, during the interaction with Wesley, sufficient reasonable suspicion that criminal activity was ongoing would arise so as to provide a basis for a search of the vehicle. Hart was hoping that he could preserve the anonymity

---

[1] Community Law Enforcement and Action Response.

of the confidential informant and not have to rely upon the information the informant had provided to justify a stop and search of the vehicle.

Officers were posted along I-75 exits in Lexington and were instructed to look for a 2017 silver Chevrolet Equinox with Indiana license plates. The vehicle was spotted exiting the interstate onto U.S. 60, also known as Winchester Road. The officer who was posted at this exit reported that the vehicle had not come to a full stop at the end of the ramp before proceeding onto U.S. 60 and had not signaled a lane change, providing justification for a traffic stop.

Officer Caleb Brill (Brill), a member of the C.L.E.A.R. Unit, was in a marked Lexington Police Department cruiser and was posted a bit down U.S. 60 from the interchange. When he heard over the radio that the vehicle had been spotted coming his way and that moving violations had been witnessed, he pulled in behind the vehicle and activated his lights. The Equinox pulled over to the side of the road in compliance.

When Brill approached the Equinox, the driver was a middle-aged white man. His driver's license identified him as Marion Buell, Jr. (Buell) and Yusef Wesley was in the passenger seat. After obtaining identification from both occupants, and after other officers had arrived on the scene and were at the Equinox with him, Brill returned to his cruiser. He ran the names through his dash computer and alerted Hart that Wesley was in the vehicle as the passenger. The

-3-

computer system the department used to obtain information was not operating properly, so Brill used his radio to contact "Channel One" and request a warrant check.

While Brill was in his vehicle, the other responding officers remained at the Equinox speaking with Buell and Wesley. After Brill had radioed Channel One, while waiting for the check to be completed, he spoke with one of the officers who had stayed by the vehicle. The officer, who had spoken with Buell, told Brill that Buell seemed very nervous. The officer further said that Buell and Wesley had told the officers both that they were coming from a gas station before being stopped, and also that they had been in Mt. Sterling looking at a vehicle for sale. Wesley had commandeered the discussion with the officers, which was notable since he was the passenger.

Based upon Buell's nervousness, Wesley's attempt to steer the conversation, the fact that the vehicle was a rental, the fact that Buell was driving rather than Wesley, and that Wesley was a known narcotics dealer, and the conflicting statements about where the two were coming from, it was determined there was reasonable suspicion to search the vehicle. A K-9 officer had arrived on the scene while Brill was waiting to hear back from Channel One and was led around the Equinox. The K-9 alerted on the vehicle.

In the trunk and the center console were found large amounts of pills in unlabeled prescription bottles, later determined to be 169 oxycodone pills, 157 hydrocodone pills, and 198.5 alprazolam pills. Both occupants were then arrested. Buell admitted to officers to having a baggie containing a combination of heroin and fentanyl tucked in his buttocks and claimed to be a user, not a trafficker. Wesley never admitted to having any contraband on him, but when he was searched prior to being jailed, a large baggie containing the same combination of heroin and fentanyl was found in his buttocks region. Both were charged with various trafficking offenses.

Wesley filed a motion to suppress the evidence seized as a result of the search of the vehicle, arguing that the stop was unnecessarily lengthened to allow for the K-9 search.[2] Buell orally joined in the motion.

Following a bifurcated suppression hearing, the trial court overruled the motion, finding that what had begun as a traffic stop had turned into a narcotics investigation. After the first hearing, the trial court had held an *in camera* hearing

---

[2] At a March 23, 2018, appearance by Wesley and his counsel before the Third Division, a request was made for transfer of this matter to the Seventh Division. The confidential informant involved in this matter had also provided information that was relevant to an indictment of Wesley on other trafficking charges which was already assigned to the Seventh Division, in the matter of *Commonwealth v. Timothy James and Wilma Johnson*, Nos. 2017-CR-01173-001 and 2017-CR-01173-002, also in Fayette Circuit Court and assigned to the Seventh Division. For purposes of judicial economy, it was believed by all parties present that the same judge should handle both cases involving the same confidential informant, and an order was entered sustaining the motion to transfer by the Third Division on April 10, 2018. On April 6, 2018, Buell was informed by the Third Division judge that his case was to be transferred to the Seventh Division.

into the reliability of the confidential informant and had been satisfied with the evidence presented. Thus, the court held, the police had probable cause to search the vehicle independent of any reasonable suspicion which arose during the traffic stop.

Both Buell and Wesley entered conditional guilty pleas, preserving their right to appeal the trial court's ruling on the motion to suppress. Having reviewed the record, the briefs, and the trial court's orders, we affirm.

## STANDARD OF REVIEW

On appellate review of a trial court's ruling on a motion to suppress evidence, the reviewing court will not disturb the trial court's findings of fact unless found to be clearly erroneous and will review the application of the law to those factual findings *de novo*. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (*citing Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

## ANALYSIS

We first will address Buell's contention that the trial court did not enter sufficient findings of fact in this matter and that a remand is necessary. We disagree.

Counsel for Buell never filed a written motion to suppress, or even a writing indicating he was joining Wesley's motion to suppress. Rather, Buell's counsel orally joined the first motion filed by counsel for Wesley.[3] Buell never actually joined in the subsequent motion filed by Wesley, which was filed by Wesley following the *in camera* hearing concerning the reliability of the informant.[4]

First, it is the responsibility of the movant to secure a ruling. "It is the duty of one who moves the trial court for relief to insist upon a ruling, and a failure to do so is regarded as a waiver." *Dillard v. Commonwealth*, 995 S.W.2d 366, 371 (Ky. 1999). Buell was clearly aware of the existence of a ruling; otherwise, he could not have entered a conditional guilty plea, the language of which indicated that he "retains the right to appeal search & seizure issues raised." The Appellant bears the responsibility of ensuring that the record before this Court is complete.[5]

---

[3] Though both Buell and the Commonwealth allege that he joined orally in Wesley's motion on April 20, 2018, the record establishes that he joined orally before the Seventh Division as early as March 23, 2018.

[4] Because of our determination about the suppression issue, the question of whether Buell actually joined the motion which was determined by the trial court is moot.

[5] In footnote 15 of Buell's opening brief, he notes that the prosecution below filed a memorandum opposing suppression, but he remarks "Buell's record does not contain a defense brief." As Buell relied upon the motion practice of Wesley's counsel, it seems elementary to expect that it would be ensured that the record on appeal contains all of the pleadings joined in below and moved to supplement the record in his appeal with anything missing. *See Smith v. Smith*, 450 S.W.3d 729, 731 (Ky. App. 2014). It is the Appellant's duty to ensure that the record on appeal is "sufficient to enable the court to pass on the alleged errors." *Burberry v. Bridges*, 427 S.W.2d 583, 585 (Ky. 1968).

It has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court. *Cf. Commonwealth, Dept. of Highways v. Richardson*, Ky., 424 S.W.2d 601 (1968). The imagined errors in the mind of appellate counsel for Thompson are no more consistent with the record herein, or absence thereof, than the fact that trial counsel was satisfied that his client was afforded due process and fair treatment and that hence his designation of that portion of the record which was designated herein was that portion where he perceived error.

*Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985).

Further, Buell makes no argument that there were factual reasons adduced during the suppression hearing which support a different conclusion concerning the legality of the stop or the search. He makes no attempt whatsoever to offer the facts in the record not cited by the trial court, which are vital to a proper consideration of the motion as they pertain to him and not to Wesley. He makes no argument that the trial court made any error in fact finding. "[A]bsent dispute, we assume the testimony from the suppression hearing is accurate and use the facts elicited during that testimony as the basis for our analysis." *Commonwealth v. Clayborne*, 635 S.W.3d 818, 824 (Ky. 2021).

Having determined that the trial court's finding of facts was supported by substantial evidence, we turn now to the conclusions of law the trial court reached as to both Appellants. Wesley focused his trial court litigation on the fact that the police officers first justified their stop of the vehicle by alleging a traffic

violation, but later switched justifications to a drug investigation wherein probable cause had been developed. We find it is of no consequence that the Commonwealth switched theories of admissibility, as long as ultimately the search was properly found to be justified. And we believe the search was justified under either theory – either probable cause arising from the interaction with Buell and Wesley on the scene or probable cause having been established by the information given by the informant alone.

First, Wesley complains that Brill had no personal knowledge to justify the stop and that the government is improperly relying upon the "collective knowledge doctrine." We disagree. Brill and Hart both testified they recalled hearing another officer, who they could not identify, announce the driving infractions he had observed Buell commit over the radio. This sharing of knowledge allowed Brill to pull over the vehicle based upon the observations of traffic offenses observed by that other officer.

> And in determining whether reasonable suspicion exists, the collective knowledge of all the law enforcement officers involved in the stop may be taken into consideration. *United States v. Williams*, 650 F. Supp. 2d 633, 653 (W.D. Ky. 2009); *see also United States v. Miramonted*, 365 F.3d 902, 905 (10th Cir. 2004) ("probable cause can rest upon the collective knowledge of the police, rather than Solely on that of the officer who actually makes the arrest[]").

*Commonwealth v. Blake*, 540 S.W.3d 369, 373 (Ky. 2018).

Next, it is alleged that even if the stop of the vehicle was proper based upon collective knowledge of the officers, it was impermissibly extended to allow for the dog sniff. We find, however, it is unnecessary for us to determine if this allegation has any merit because, at this part of the interaction, we find probable cause to stop and search attained by virtue of the drug investigation. Once Brill had the identifications of Wesley and Buell and had verified that Wesley was in the vehicle, as the informant described, down to the license plate number and state, the police then had sufficient probable cause to extend the encounter to conduct a proper search as part of a drug investigation based upon the information generated by the informant.

Police officers may not extend or prolong traffic stops without reasonable, articulable suspicion to conduct further criminal investigation. *See Rodriguez v. United States*, 575 U.S. 348, 355, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). Here, the facts articulated – nervousness, different stories, rental car, presence in vehicle of person identified by informant – all provided reasonable suspicion to conduct the sniff, which indubitably extended the duration of the stop. But it was at this time that the stop was no longer solely related to the traffic offenses. The informant's information had also been sufficiently corroborated to form the basis of seizing and searching Wesley, Buell, and the vehicle.

The trial court cited *Cook v. Commonwealth* and pointed out the factual similarities between that case and the case at bar. 649 S.W.2d 198 (Ky. 1983). In *Cook*, the trial court noted, the police had received information from an *unidentified* confidential informant that a yellow pick-up truck carrying three white males – the identity of only one of the three was known to the informant – would be found driving in the eastern part of Jefferson County. The informant provided the vehicle would turn on a particular road, and the occupants would have a quantity of cocaine with them which had been seen by the informant earlier in the evening. The Supreme Court held, in part:

> In this case, the police officers had information sufficient to justify a reasonable belief that an investigation should be made. The exigency of time would induce a reasonable person to believe that some immediate action was appropriate. The officers had a right to stop appellants' vehicle, at least long enough to secure identification of the occupants, as a part of that investigation.

*Id*. at 201.

The information known to law enforcement from the *qualified* confidential informant in the present case is arguably even more substantive than the information in *Cook*. In the present case, the informant had not just told officers where a car could soon be found, but told officers when the subject vehicle would be leaving Detroit, allowing officers to determine when the vehicle would arrive in Lexington. The informant here also provided not just a description of the

-11-

vehicle, like "older yellow pick-up truck," but the make, model, color, and license plate of the vehicle. The information from the qualified confidential informant having been corroborated, law enforcement had every right to search the vehicle and the persons of Buell and Wesley. *See Commonwealth v. Baldwin*, 199 S.W.3d 765, 769 (Ky. App. 2006) ("However, information from an informant may be corroborated by an independent police investigation to establish probable cause."). We affirm the trial court's order overruling the motion to suppress.

## CONCLUSION

The trial court properly overruled Wesley's motion to suppress. The law was properly applied to the factual findings made by the trial court, which were supported by substantial evidence, following several suppression hearings. We affirm.

GOODWINE, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT
MARION BUELL, JR.:

Molly Mattingly
Frankfort, Kentucky

BRIEFS FOR APPELLANT
YUSEF KWAN WESLEY:

Jared Travis Bewley
Sarah D. Dailey
Frankfort, Kentucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van de Rostyne
Assistant Attorney General
Frankfort, Kentucky