RENDERED: APRIL 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1431-MR

COMMONWEALTH OF KENTUCKY                    APPELLANT


APPEAL FROM WASHINGTON CIRCUIT COURT
v.          HONORABLE KAELIN G. REED, JUDGE
ACTION NO. 23-CR-00034-002


SUSAN HOOPER                    APPELLEE

AND


NO. 2025-CA-0249-MR

COMMONWEALTH OF KENTUCKY                    APPELLANT


APPEAL FROM WASHINGTON CIRCUIT COURT
v.          HONORABLE KAELIN G. REED, JUDGE
ACTION NO. 23-CR-00034-001


EDGAR GRIBBINS                    APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND MOYNAHAN, JUDGES.

CALDWELL, JUDGE:  The Commonwealth of Kentucky ("the Commonwealth") appeals from the suppression of evidence obtained in a warrant-based search.  We reverse and remand for further proceedings.[1]

## FACTS

Detective Ian Justice ("Detective Justice") of the Nelson County Sheriff's Office prepared an affidavit for a search warrant on or about April 19, 2023.  The affidavit noted Detective Justice was assigned to the Greater Hardin County Narcotics Task Force ("the task force").  The affidavit indicated that law enforcement wished to search for evidence relating to the manufacture, possession, and trafficking of controlled substances including methamphetamine.  The affidavit further described the premises to be searched, and the specific types of evidence law enforcement sought to collect.

The affidavit also included a statement that:

Affiant states there is probable and reasonable cause to believe, and affiant does believe that said property constitutes: . . .

property of things used as the means of committing a crime; or

---

[1] The cases of Hooper and Gribbins are not consolidated for all purposes but were heard together at oral argument for purposes of judicial efficiency; thus, the Court is issuing one Opinion regarding both cases.

> property or things in the possession of a person who intends to use it as a means of committing a crime;
>
> property or things in the possession of a person to whom it was delivered for the purpose of concealing it or preventing its discovery and which is intended to be used as a means of committing a crime;
>
> property or things consisting of evidence which tends to show that a crime has been committed or that a particular person has committed a crime.

(Marks on blank lines next to descriptions of types of property omitted). (Record on Appeal for Hooper, page 33).

Next, the affidavit described Detective Justice's training and experience. It stated Detective Justice had been a certified police officer for four years and was assigned to the task force since January 2022. The affidavit also stated he graduated from the Kentucky Department of Criminal Justice Training Academy, and had received hundreds of hours of continuing education, including many hours of training about drug investigations. The affidavit further asserted Detective Justice had been involved in investigating many drug trafficking cases leading to arrests and convictions.

The affidavit also stated that the information and observations referenced therein were received and made in Detective Justice's capacity as an officer of the task force. Next, the affidavit stated:

> In February of 2023, Detectives with the Greater Hardin County Narcotics Task Force received information from

a reliable confidential source, that Edgar Gribbins was actively selling Methamphetamine in Willisburg, Kentucky.

In March of 2023, Detectives with the Greater Hardin County Narcotics Task Force utilized a reliable confidential source to purchase methamphetamine from Edgar Gribbins, at his residence of 1086 Hayes Lane, Willisburg Kentucky, 40078.

In March of 2023, again, Detectives with Greater Hardin County Narcotics Task Force utilized a reliable confidential source to purchase methamphetamine from Edgar Gribbins, at his address of 1086 Hayes Lane, Willisburg Kentucky, 40078.

Within the past 72 hours, Detectives were told by a reliable confidential source that Edgar Gribbins currently has Methamphetamine for sale at his address of 1086 Hayes Lane Willisburg Kentucky, 40078.

(Record on Appeal for Hooper, page 34).

A Nelson Circuit Court Judge issued the desired warrant on or about April 19, 2023. Shortly thereafter, the task force searched the residence of Edgar Gribbins ("Gribbins"), where Susan Hooper ("Hooper") was also living. During this search, officers found suspected methamphetamine, hydrocodone pills in a bottle not prescribed to either Gribbins or Hooper, and drug paraphernalia.

A Washington County grand jury indicted Gribbins for two counts of first-degree trafficking in a controlled substance, possession of a firearm by a convicted felon, one count of second-degree trafficking in a controlled substance, and possession of drug paraphernalia. Hooper was also indicted by a Washington

County grand jury on two counts of first-degree trafficking in a controlled substance, one count of second-degree trafficking in a controlled substance, and possession of drug paraphernalia.

Gribbins and Hooper filed motions to suppress the evidence obtained in the search pursuant to the warrant, and all parties filed briefs with the Washington Circuit Court. The Washington Circuit Court declined to conduct an evidentiary hearing, stating: "Because the argument of the parties is based on a lack of probable cause in the search warrant affidavit, no hearing was necessary." (Page 1 of both orders granting suppression motions filed by Hooper and Gribbins, also located at the Record on Appeal for Hooper, p. 77 and Record on Appeal for Gribbins, p. 79).

The Washington Circuit Court set forth a Statement of Facts. It found Detective Justice obtained a warrant to search the property located at 1086 Hayes Lane in Willisburg, Kentucky. The court further found the affidavit explained Detective Justice's "experience and training in law enforcement, specifically in drug trafficking investigation." (Page 1 of both orders granting suppression). Next, the court quoted the four paragraphs of the affidavit about the task force receiving tips from one or more "reliable" sources in February 2023 and in April 2023, and the task force's using one or more "reliable confidential" sources to buy

methamphetamine from Gribbins at his residence on two occasions in March 2023 (Page 2 of both orders granting suppression).

After concluding its statement of facts with this quotation of the four paragraphs about tips and purchases from the affidavit, the Washington Circuit Court discussed the parties' arguments and quoted relevant precedent in its analysis. Ultimately, it concluded the affidavit failed to establish probable cause for issuing a warrant because the affidavit did not set forth a factual basis for determining the reliability of any unnamed source or informant who provided tips or participated in purchases. The court also construed the affidavit as not showing officers did any further investigation to corroborate the tips or to make sure that the alleged drug buys did occur. So, it granted the suppression motions.

The Commonwealth appealed. Following appellate briefing, a panel of this Court heard oral argument in February 2026.[2] Further facts will be set forth as needed in our analysis.

## ANALYSIS

"The Fourth Amendment requires only that a search warrant have substantial proof supporting a probable cause belief that a search would uncover

---

[2] Willisburg is in Washington County, Kentucky. At all relevant times, Detective Justice was an employee of the Nelson County Sheriff's Office assigned to the Greater Hardin County Narcotics Task Force. The warrant was signed by a Nelson Circuit Court judge, whose circuit did not include Washington County. At oral argument, this Court inquired into whether Hooper and Gribbins challenged the jurisdiction of the law enforcement officers and/or the court. The respective attorneys for Hooper and Gribbins stated there was not a jurisdictional issue.

criminal activity." *Commonwealth v. Master*, 706 S.W.3d 140, 147 (Ky. 2024) (citing *Illinois v. Gates*, 462 U.S. 213, 237, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)) (hereinafter "*Gates*")).  In other words,

> the warrant-issuing judge is not required to attest to the validity of the information provided in the warrant, but rather "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Minks v. Commonwealth*, 427 S.W.3d 802, 808 (Ky. 2014) (quoting *Gates*, 462 U.S. at 238).

For over four decades, binding Kentucky precedent has followed *Gates* and thus applied a "totality of the circumstances" approach to reviewing the issuance of a search warrant.  *Commonwealth v. Pride*, 302 S.W.3d 43, 47–48 (Ky. 2010) (citing *Beemer v. Commonwealth*, 665 S.W.2d 912 (Ky. 1984)).

The totality of the circumstances approach set forth in *Gates* calls for considering the statements set forth in the affidavit together rather than rigidly scrutinizing each statement in the affidavit in isolation in a hyper-technical fashion:

> We agree with the Illinois Supreme Court that an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report.  We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case, which the opinion of the Supreme Court of Illinois would imply.  Rather, as detailed below, they should be

understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

. . .

This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception."

*Gates*, 462 U.S. at 230–31. *See also Moore v. Commonwealth*, 159 S.W.3d 325, 329 (Ky. 2005) ("Courts should review the sufficiency of an affidavit underlying a search warrant in a commonsense, rather than hypertechnical, manner.").

Moreover, the judicial preference for searches conducted pursuant to warrant over warrantless searches calls for extending great deference to the decision of a judge to issue a warrant. *Pride*, 302 S.W.3d at 48 (citing *Gates*, 462 U.S. at 236).

Thus, the trial court judge faced with a motion to suppress evidence obtained pursuant to a search warrant should apply the *Gates* standard, and determine whether under the "totality of the circumstances" presented within the four corners of the affidavit, a warrant-issuing judge had a substantial basis for concluding that probable cause existed.

*Pride*, 302 S.W.3d at 49.

The trial court judge need not conduct an evidentiary hearing to determine whether factual allegations in an affidavit are true unless there are allegations that law enforcement officers who obtained the warrant "included intentionally or recklessly false statements or purposefully or recklessly omitted material facts" in the affidavit. *Id*. at n.1. We are unaware of any allegations in this appeal that law enforcement officers intentionally or recklessly made false statements or purposefully or recklessly omitted material facts. In fact, none of the parties have contended that the Washington Circuit Court (the trial court who reviewed the decision of the warrant-issuing judge) should have conducted an evidentiary hearing.

However, while the parties apparently agree no evidentiary hearing was necessary, they disagree about whether the trial court erred in determining that the statements in the affidavit did not establish probable cause to issue a warrant and therefore granting the motion to suppress.

### Appellate Standard of Review for Ruling on Motion to Suppress Evidence Obtained in a Warrant-Based Search

Upon appellate review, we must first consider whether the trial court's findings of fact are supported by substantial evidence. Next, we must determine whether the trial court was correct in determining that the judge who issued the warrant did not have a substantial basis for concluding probable cause existed. Moreover, in so doing, we cannot consider extrinsic evidence but must focus solely

on statements in the four corners of the affidavit in analyzing the conclusion of the

warrant-issuing judge. *Master*, 706 S.W.3d at 147.[3]

---

[3] *Master* does not explicitly call for *de novo* review of a trial court's determination—based on the four corners of the affidavit and not on an evidentiary hearing—that the issuing court erred in determining whether probable cause was established and therefore in ruling on a motion to suppress evidence from a warrant-based search. *See* 706 S.W.3d at 147. *But see Drake v. Commonwealth*, 222 S.W.3d 254, 256 (Ky. App. 2007) (though probable cause determination by judge or magistrate issuing warrant must be reviewed with great deference and the factual findings made by a trial court ruling on a motion to suppress evidence obtained in a warrant-based search are reviewed under the deferential clear error standard, appellate courts "must conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.").

Despite any lack of express reference to a *de novo* standard of review in this warrant-based search context in *Master*, federal courts apply a *de novo* standard of review to a trial court's determination—based on the four corners of the affidavit and not on an evidentiary hearing—that the issuing judge or magistrate erred in determining whether probable cause was established and therefore in ruling on a motion to suppress evidence from a warrantless search:

> On appeal, Brown argues that the district court erred both in denying his motion to suppress and in rejecting his argument that the officer's affidavit did not provide probable cause for the magistrate to issue the search warrant. When reviewing a district court's order denying a defendant's motion to suppress, we review for clear error the district court's factual findings, but we review de novo the district court's application of the law to those facts. *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (citing *United States v. Garcia*, 496 F.3d 495, 502 (6th Cir. 2007)).

> The district court held no fact-finding hearing in conjunction with Brown's motion to suppress; rather, the court reviewed the affidavit and held that it provided probable cause for the magistrate to issue the search warrant. Therefore, we will review *de novo* the court's legal conclusion that the affidavit provided probable cause. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir. 1993). Given the *de novo* standard of review, where, as here, the district court reviewed the magistrate's probable cause determination, we owe the district court's conclusion no particular deference. *Id.*, at 1362–63.

*United States v. Brown*, 732 F.3d 569, 572–73 (6th Cir. 2013). On the other hand, federal courts "must give great deference to a magistrate's determination of probable cause" to issue a search warrant. *Id.* at 573.

-10-

With these parameters in mind, we review the assertions raised in the parties' appellate briefs. "We have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

**Principal Arguments Center on Reliability of Informants and Whether Tips Were Corroborated by Independent Investigation**

Much of the debate about the affidavit concerns whether it adequately sets forth any basis for stating the informant or informants were reliable and whether tips given by such informant(s) were corroborated by investigation.

"Typically, a bare and uncorroborated tip received from a confidential informant, without more, would be insufficient to establish probable cause for a search warrant." *Lovett v. Commonwealth*, 103 S.W.3d 72, 78 (Ky. 2003) (citing *Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 1378, 146 L. Ed. 2d 254 (2000)). However, sometimes an uncorroborated tip bears more weight under certain circumstances often referred to as indicia of reliability—such as when it provides great detail or when it is a statement against one's penal interest. *Id*. at 79.

Moreover, even when no basis is clearly expressed for stating that an informant is reliable, probable cause may properly be found to exist when the affidavit indicates the informant's tip was corroborated by independent

investigation. *Commonwealth v. Baldwin*, 199 S.W.3d 765, 769–70 (Ky. App. 2006). *See also Howard v. Commonwealth*, 362 S.W.3d 333, 335–36 (Ky. App. 2011) (vague tip from confidential source mentioned in affidavit was corroborated by statements in affidavit referring to police pulling defendant's trash and finding a substance which officers perceived to be marijuana; thus, probable cause existed to support issuing a search warrant).

Also, even when none of the individual statements in an affidavit are by themselves sufficient to support probable cause, sometimes the statements— when properly read together as part of the flexible, totality of the circumstance's approach—support the existence of probable cause to issue a warrant. *See generally Pride*, 302 S.W.3d at 47–50.

## Summary of Parties' Principal Arguments

Appellees Hooper and Gribbins contend the trial court correctly determined that the warrant-issuing judge did not have a substantial basis for concluding probable cause existed.[4] They argue there was nothing in the affidavit to show a factual basis for concluding the informants were reliable or to clearly indicate that drug purchases were controlled buys or even occurred at all. They

---

[4] Hooper and Gribbins also contend the trial court's findings of fact are supported by substantial evidence. Similarly, even the Commonwealth does not appear to clearly assert that the limited factual findings set forth in the trial court's Statement of Facts—which briefly noted that Detective Justice obtained a search warrant to search the premises, and that the affidavit explained Detective Justice's experience and training before quoting the affidavit's four paragraphs about tips and purchases—are not supported by substantial evidence.

also assert that much of the information stated in the affidavit was stale because it was based on events occurring a month or two before the execution of the affidavit and search warrant in April 2023. They contend the affidavit was "bare bones" and did not contain sufficient details to support the existence of probable cause.

The Commonwealth admits that the affidavit's description of the February tip by a "reliable source" was vague and did not, by itself, identify a basis for why the source was reliable. But the Commonwealth also contends this tip was corroborated by statements about the task force's using reliable confidential sources to buy illegal drugs in March 2023, which the Commonwealth characterizes as indicating controlled buys.

Moreover, the Commonwealth asserts that the trial court erred in scrutinizing each individual statement about a tip or purchase in isolation and finding each statement insufficient to support probable cause. The Commonwealth argues the trial court should have instead construed all the statements in the affidavit together to support the existence of probable cause. It also contends the trial court did not extend sufficient deference to the warrant-issuing judge's probable cause determination.

Having taken note of the parties' principal arguments, we agree with the Commonwealth that the trial court erred in granting the motion to suppress.

**Trial Court Did Not Review Warrant-Issuing Judge's Decision with Sufficient Deference and Failed to Properly Consider Statements in Affidavit Together Under the Flexible, Totality of the Circumstances Approach**

While we do not agree with every sub-argument advanced by any party, we agree with the Commonwealth that the trial court did not review the warrant-issuing judge's probable cause determination with sufficient deference.

Most importantly, although perhaps none of the individual statements about tips and purchases were—by themselves—sufficient to establish probable cause, the statements support the warrant-issuing judge's probable cause determination when properly considered together in a common-sense, practical manner. *See Gates*, 462 U.S. at 230–31. *See also Pride*, 302 S.W.3d at 47–50 (upholding trial court's denial of motion to suppress evidence from a warrant-based search, noting trial court "found that each element contained in the affidavit was individually inadequate to issue the warrant, but that collectively, the totality of the circumstances provided the warrant-issuing judge a substantial basis for . . . conclud[ing] that probable cause existed" and holding trial court properly concluded the warrant-issuing judge had a substantial basis for determining that probable cause existed).

The trial court here noted courts must determine whether probable cause exists by looking at the totality of the circumstances. But it improperly considered statements in the affidavit about the tips and purchases in isolation to

-14-

conclude probable cause did not exist because no individual statement about the tips and purchases was, in its estimation, sufficient to establish probable cause.

For example, the trial court determined there were no statements in the affidavit to establish the reliability, veracity or basis of knowledge for the February 2023 tip from a "reliable source." Next, it rejected the Commonwealth's assertion that this February 2023 tip was corroborated by law enforcement's using one or more confidential informants to buy illegal drugs on two occasions in March 2023. The trial court stated there was nothing in the affidavit to establish the reliability of the confidential informant or informants who participated in the alleged drug buys. It further declared there was no evidence in the affidavit indicating that officers did any further investigation to corroborate that the alleged drug buys actually occurred. Thus, the court concluded the reliability of the March 2023 drug buys were not established and did not corroborate the February 2023 tip.

Lastly, regarding the statement about law enforcement receiving another tip from a reliable informant about Gribbins' selling methamphetamine at his home within 72 hours of the signing of the affidavit, the trial court concluded nothing in the affidavit showed the reliability, veracity or basis of knowledge of this informant. It further stated: "there are no statements regarding any additional investigation by law enforcement to corroborate the tip." (Page 4 of both orders granting suppression motions).

While we appreciate the trial court's scrutiny of the affidavit's contents and its willingness to enforce citizens' Fourth Amendment rights, we conclude it erred in failing to read the statements in the affidavit as together establishing probable cause. As the Commonwealth expressed at oral argument, the affidavit referred to a tip followed by two purchases followed by another tip over the course of a couple of months. Again, the affidavit referred to: 1) the February 2023 tip from a reliable source about Gribbins' selling methamphetamine, 2) law enforcement's using a reliable confidential informant to purchase illegal drugs at Gribbins' residence on one occasion in March 2023, 3) law enforcement's again using a reliable confidential informant to purchase drugs at Gribbins' residence on another occasion in March 2023, and 4) a tip about Gribbins' selling drugs at his residence received within 72 hours of the execution of the April 2023 affidavit for a search warrant.

**We Reject Appellees' Argument That Probable Cause Could Not Be Established Due to Alleged Staleness of Information Received Over a Two-Month Period**

Given the brief two-month period during which these events occurred according to the affidavit, we reject the Appellees' arguments that the information provided in the affidavit was too stale to establish probable cause. *See Ragland v. Commonwealth*, 191 S.W.3d 569, 583–84 (Ky. 2006) (citing *United States v. Grant*, 108 F. Supp. 2d 1172, 1175–76 (D. Kan. 2000)) (discussing how even if

information is argued to be stale due to the passage of a significant period of time—even six months—between law enforcement's receiving a tip and the execution of an affidavit for a search warrant, the time period itself is not solely determinative of whether probable cause exists but must be weighed with other factors, such as the nature of the crime and any evidence of longstanding, ongoing criminal activity). *See also Pride*, 302 S.W.3d at 50 (despite staleness argument based on a tip being received a year and a half before the affidavit was executed, police quickly began an investigation after first determining that the informant was reliable and probable cause to search was thus properly established).

### In Sum, Statements in Affidavit Together Support Probable Cause Determination

Together, the four statements about two tips and two purchases over a brief two-month period in Detective Justice's affidavit provide a substantial basis for the warrant-issuing judge's probable cause determination despite the imperfections of each individual statement when viewed in isolation and in hindsight. This is especially true because the last three paragraphs about tips and purchases referred to the specific street address at which Gribbins resided with Hooper, and the first paragraph (about the February 2023 tip) referred to Gribbins' allegedly selling methamphetamine in Willisburg.

Furthermore, despite the lack of stated basis for determining the source was reliable in the statement about the February 2023 tip, this tip was

-17-

corroborated by the statements that, on two occasions in March 2023, law enforcement used one or more confidential, reliable informants to purchase drugs at Gribbins' residence. Using confidential informants to purchase drugs at the residence was clearly a form of independent investigation conducted by law enforcement to corroborate the tip.

Moreover, even though the affidavit does not expressly state that these March 2023 purchases were controlled buys or that law enforcement was monitoring these purchases, the statements about these March 2023 events do indicate that illegal drugs were purchased at Gribbins' residence just weeks after the February tip. Despite the trial court's and Appellees' assertions that the affidavit only indicates **attempts** to use sources to buy drugs, the language used in the affidavit—stating the task force **utilized** confidential informants **to purchase** illegal drugs at the Gribbins' residence on two separate occasions—clearly connotes that such purchases occurred.

Furthermore, despite the lack of express basis for determining the source of the April 2023 tip was reliable in the paragraph describing this last tip, other statements in the affidavit allude to a series of prior related events indicating ongoing criminal activity. The fact that a task force officer received the April 2023 tip just a few days before execution of the affidavit after the task force previously received a similar tip in February 2023 and then used one or more reliable,

confidential informants to buy illegal drugs at Gribbins residence on two occasions in March 2023, indicates a fair probability that contraband or evidence of a crime would be found at the residence.

Also, the warrant-issuing judge could properly consider the affidavit's information about Detective Justice's experience and training about law enforcement and drug investigations in reaching its probable cause determination. *See Howard*, 362 S.W.3d at 337 (upholding probable cause determination under the totality of the circumstances, including an officer's perception that item found in defendant's trash was marijuana because a trained police officer "had the necessary expertise to determine the substance was marijuana."). *See also Master*, 706 S.W.3d at 147 ("While the Court of Appeals stressed that a police officer's experience is an important factor, it was only one factor" to consider when assessing whether there was probable cause to issue a warrant.).

Employing a practical, common-sense approach and properly reading all statements in the affidavit together, there was clearly a fair probability that contraband or evidence of a crime could be found at the Gribbins residence (where Hooper undisputably also lived at the time). Thus, there was a substantial basis to support the existence of probable cause to issue a search warrant for this residence.

Of course, though we read the affidavit as a whole in a practical and common-sense manner, we are aware our Supreme Court has directed that courts

must look solely at the four corners of the affidavit without stretching the information provided therein to make undue inferences. *See Master*, 706 S.W.3d at 148–49:

> common sense is not a bottomless well from which the Commonwealth can draw any inference it desires; nor is it a free-floating concept unmoored from the underlying facts within the four corners of the affidavit. It cannot be. Common sense indeed is a wide-ranging and imprecise standard, but it *is* a standard—it is not *carte blanche*. There must be something more than conclusory allegations in the affidavit to pass constitutional muster. Mere affirmance of belief or suspicion is not enough.

(Internal quotation marks and citations and omitted.)

But this case is distinct from *Master*. The affidavit here does not merely contain conclusory allegations. Instead, the affidavit clearly states the task force not only received two tips from sources viewed as reliable, but also used a source or sources that task force officers viewed as reliable to purchase illegal drugs on two occasions at the Gribbins/Hooper residence in the February-April 2023 period.

Moreover, these statements about tips and purchases refer to illegal activity—the sale of illicit substances—in contrast to the allegations of a child sex doll being sent to Master's residence at a time when possession of such a doll was

not prohibited by Kentucky law. *See id.* at 149.[5] Also, in contrast to police

inferring that the then-legal sending of such a child sex doll to Master's residence

meant that Master would also possess child pornography, *see id.* at 148, the

affidavit here does not infer any illegal activity from any legal activity. Instead, it

simply refers to tips about the sale of illicit substances by Gribbins (including one

sale taking place at his home) and the task force's using confidential informants to

buy such illicit substances at the specific street address of Gribbins' home.

Lastly, we recognize the affidavit here does not specifically mention

Hooper by name. Nonetheless, the affidavit established probable cause to search

Gribbins' residence and Hooper has not denied that she was living there when the

search occurred. Any issues about the sufficiency of the evidence against Hooper

(or Gribbins) to convict them of the charged offenses may be addressed by the trial

court, upon proper motion, on remand. Nonetheless, we are compelled to reverse

the trial court's granting of the suppression motions.

In sum, despite any lack of further detail in the affidavit, considering

the totality of the circumstances as reflected by the descriptions of the four events

noted in the affidavit, the warrant-issuing judge had a substantial basis for

---

[5] Our Supreme Court also quoted portions of the Court of Appeals' opinion noting Master did not actually receive the doll before law enforcement intercepted it and "the affidavit provides no proof the doll was purchased through a web site or that Appellant KM [Master] ordered the doll." *Master*, 706 S.W.3d at 146. Our Supreme Court also independently stated: "Master never possessed the doll in question" in its own analysis. *Id.* at 149.

determining probable cause existed for issuing a search warrant. Thus, the trial court erred in granting the motion to suppress.

Furthermore, as we conclude that the four corners of the affidavit supported the warrant-issuing judge's probable cause determination, we need not address the parties' arguments about whether the good-faith exception applies.

**CONCLUSION**

For the foregoing reasons, the orders granting suppression are REVERSED and the cases REMANDED to the Washington Circuit Court for further proceedings.

MOYNAHAN, JUDGE, CONCURS.

MCNEILL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MCNEILL, JUDGE, DISSENTING: I respectfully dissent. Like the Majority, I also have the utmost respect for law enforcement officials combating the drug scourge plaguing our Commonwealth. But that is not the issue here. Rather, we must determine how low is the constitutional bar for obtaining a search warrant. In answering this question, we are constrained by the following authorities: 1) United States Constitution Amendment IV.; 2) the seminal decision in *Gates*; and 3) how *Gates* has been *applied* by Kentucky Courts in the four decades since its rendition.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects citizens from

unreasonable searches and seizures by the government. "Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment." *Minks v. Commonwealth*, 427 S.W.3d 802, 810 (Ky. 2014). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gate*s, 462 U.S. 213, 232 (1983). A trial court's "determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236 (citation omitted).

> The appellate courts' review is two-pronged. First, a determination that "the facts found by the trial judge are supported by substantial evidence[;]" and second, "whether the trial judge correctly determined that the issuing judge did or did not have a 'substantial basis for . . . concluding' that probable cause existed." *Id.* (citing *Gates*, *supra*, at 236, 103 S.Ct. 2317). "We also review the four corners of the affidavit and not extrinsic evidence in analyzing the warrant-issuing judge's conclusion." *Id.*

*Commonwealth v. Master*, 706 S.W.3d 140, 147 (Ky. 2024) (citing *Commonwealth v. Pride*, 302 S.W.3d 43, 48 (Ky. 2010)) (clarifying the correct standard of review and explaining why *de novo* does not apply in warrant-based cases). With this standard in mind, I turn to the relevant law and facts at issue in the present case.

The underlying warrant has four relevant statements—two involving tips from a reliable source, and two instances alleging that a reliable source was "utilized" to purchase methamphetamine. The Commonwealth concedes that "the

February informant's tip was admittedly vague. But the police then conducted an independent investigation by using reliable confidential source(s) to purchase methamphetamine on two separate occasions." Indeed, this rule of two is thematic in the Commonwealth's argument. However, the observation that a poisonous tree has two roots does not render its fruit any more palatable than if it had only one. More precisely, the key constitutional infirmities here are: 1) the absence of specificity surrounding the alleged informant(s)—from the February "tip" through the most recent—and 2) the complete absence of information concerning what the Commonwealth repeatedly references as "controlled drug buys." Each will be addressed in turn.

*Tips*

We begin with *Gates*, which "consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Gate*s, 462 U.S. at 241. Thus, "conclusory" and "bare bones" information is insufficient to establish probable cause. *Id*. at 239. *See also, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Kentucky Courts echo this admonition that "[t]ypically, a bare and uncorroborated tip received from a confidential informant, without more, would be insufficient to establish probable cause for a search warrant." *Lovett v. Commonwealth*, 103 S.W.3d 72, 78 (Ky. 2003). In affirming the circuit court's

denial of Lovett's motion to suppress evidence, the Kentucky Supreme Court

reasoned as follows:

> The level of detail provided by the confidential informant in this case, in addition to his statement of first-hand observation, lends significant reliability to the information he provided. While the fact that the information was consistent with information from other anonymous sources had little corroborative value, the affidavit did not consist of "merely conclusory statements" condemned by the Court in *Gates* that gave "the magistrate virtually no basis for making a judgment regarding probable cause."
>
> . . . .
>
> While the confidential informant in the present case did not specifically admit to criminal activity, he made such statements detrimental to his penal interest as that he was a regular visitor to Appellant's methamphetamine laboratory and that he had been in possession of a duffel bag containing items used in the manufacture of methamphetamine. Therefore, these facts provide another "indicium of reliability" to the information provided by the confidential informant.

*Id*. at 78-79. The underlying affidavit in the present case falls well below the bar

in *Lovett* necessary to establish the veracity of confidential informants.[6]

---

[6] For example, in both the Majority Opinion and the Commonwealth's brief, there is acknowledgment of uncertainty whether "informants" was meant to be in the plural form. The affidavit says "again," which may or may not be plural. The trial court's order also reflects this uncertainty in referencing the confidential "informant or informants" that participated. In other words, there may have been two different sources—or it might be one informant who was "utilized." Such ambiguity is thematic and memorialized by the Majority's invocation of the following: "[m]oreover, even though the affidavit does not expressly state . . . . Furthermore, despite the lack of express basis for determining the source . . . . Lastly, we recognize the affidavit here does not specifically mention . . . . In sum, despite a lack of further detail in the

-25-

*Drug Buys*

To the extent that there were drug buys, there is no indication that they were controlled, monitored, or corroborated by law enforcement in any way. The affidavit does not mention law enforcement's participation in these alleged purchases or provide any details regarding Detective Justice's knowledge of these purchases. *Cf. Cobb v. Commonwealth*, 105 S.W.3d 455, 456 (Ky. 2003) (describing standard procedures for controlled buys as including confidential informant testimony, law enforcement surveillance, audio and video recording of transactions, and laboratory testing of purchased substances). It evades the underlying affidavit, given the highly sophisticated nature of the narcotics task force.

Yet, the Majority repeatedly invokes "commonsense" and "deference" to obviate the deficiencies observed by the circuit judge exercising his discretion in finding the warrant wanting. Indeed, this point cannot be overemphasized. Deference is not dictation. The remedy for a constitutionally infirm warrant is suppression of the evidence obtained therefrom by a reviewing judge. That is exactly what happened here. An observation that it is exceedingly rare only highlights the affidavit's insufficiency—not redeems it.

---

affidavit . . . ." These prefatory admonitions appropriately frame the words that follow each— and the conclusion they reach.

And while my research reveals an absence of cases affirming suppression orders, multiple Kentucky appellate decisions demonstrate circumstances where courts found warrant affidavits fundamentally deficient, based on insufficient information, thus requiring reversal of trial court denials of suppression motions. *Compare Hensley v. Commonwealth*, 248 S.W.3d 572 (Ky. App. 2007) (reversing where the affidavit contained nothing more than conclusory allegations, with no information given to the judge identifying the source or age of information regarding illegal activity from which the judge could have determined veracity or basis of knowledge) *with Commonwealth v. Baldwin*, 199 S.W.3d 765, 769 (Ky. App. 2006) (upholding search warrant where confidential informant was corroborated by independent police investigation and drug dog alert).

While we are factually constrained by the four corners of the underlying affidavit, no such device limits our review of the law. Indeed, there is ample Kentucky case law navigating the bar for obtaining a search warrant.[7] At

---

[7] *E.g.*, *Crum v. Commonwealth*, 223 S.W.3d 109 (Ky. 2007) (the Kentucky Supreme Court reversed the Court of Appeals' decision affirming the trial court, where the only information set forth in the affidavit was that some unnamed person had told a law enforcement officer that defendant had a quantity of illegal contraband and that the officer received some unspecified information from a deputy); and *Jenkins v. Commonwealth*, No. 2006-SC-000523-MR, 2008 WL 2484938 (Ky. Jun. 19, 2008) (reversing where search warrant not based on probable cause due to bare bones affidavit lacking informant reliability); *Pride*, 302 S.W.3d at 50-51 (upholding search warrant based on informant's proven reliability on at least three prior investigations and the detective's corroborating investigation of electrical usage patterns); *Crayton v. Commonwealth*, 846 S.W.2d 684, 688 (Ky. 1992) ("if it should appear that the affidavit failed to describe with particularity . . . or that the judicial officer merely acted as a rubber stamp for the police, then public policy would require suppression as the essential purpose of the warrant would have been defeated."); *Cunningham v. Commonwealth*, No. 2010-CA-001197-MR, 2012 WL 246277, at *3

one end of the sufficiency spectrum, we have *Baldwin*, *Pride*, and *Lovett*.  At the

other extreme end, we have *Hensley*.  Here is the cited portion of the affidavit in

*Hensley*:

> On the 5TH day of SEPTEMBER, 2004, at
> approximately a.m./p.m., affiant received information
> from/observed: RECIEVED [sic] SEVERAL
> COMPLAINTS OF POSSIBLE PRODUCTION OF
> METHAMPHETAMINE.
>
> Acting on the information received, affiant conducted the
> following independent investigation: ON SUNDAY
> SEPTEMBER 5TH 2004 A RELIABLE
> CONFIDENTIAL INFORMANT TOOK THIS
> OFFICER AND BRIAN REAMS TO THE
> RESIDENCE.  UPON SPEAKING TO THE WOMAN
> YOU COULD SMELL A STRONG SMELL OF
> ETHER.

*Hensley*, 248 S.W.3d at 575 (capitalization in original).  Therein, the Court

reversed the circuit court's denial of a motion to suppress and reasoned in part as

follows: "[w]hile nothing in the record specifically indicates Officer Hodge

intentionally attempted to fraudulently obtain the instant search warrant, his failure

to include with specificity any reasonable indication of probable cause in the

affidavit went beyond mere negligence."  *Id*. at 577.  Based on the foregoing—and

---

(Ky. App. Jan. 27, 2012) (upholding warrant based on three controlled drug purchases where the detective maintained visual surveillance and independently corroborated information about the defendant); and *Edwards v. Commonwealth*, No. 2004-SC-0047-MR, 2005 WL 119770, at *1 (Ky. Jan. 20, 2005) (upholding a search warrant based on two controlled buys where "the confidential informant was searched prior to his entering the apartment, and after he returned from the apartment" and "using police buy money, the confidential informant bought cocaine on both occasions.").

at the risk of being overly reductive—I frame the issue here as whether the underlying affidavit is more like the one in *Hensley*, or more like the extremely detailed affidavits fortified by demonstrable independent law enforcement investigations as recited in *Pride*, *et al.* I concede that there is no clear answer.

And while on the topic of clarity, I want to emphasize that I am not questioning Detective Justice's veracity in any way. Indeed, the facts in *Hensley* are distinguishable from the present case. On balance, however, I believe that the affidavit at issue here is quite removed from what Kentucky Courts have repeatedly affirmed as constitutional. I arrive at this conclusion based on the totality of the circumstances *documented* in the affidavit, without resort to extrinsic evidence or its indiscernible twin—gratuitous inference. In so observing, I am merely echoing the concerns aptly summarized in the circuit court's underlying suppression order:

> [T]here is no evidence in the four corners of the affidavit establishing the reliability of the confidential informant or informants that participated in the alleged drug buys. Furthermore, there is no evidence in the affidavit that the officers did any further investigation to corroborate that the alleged buy did, in fact, occur . . . .

Therefore, I respectfully dissent.

BRIEFS FOR APPELLANT:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky


ORAL ARGUMENT FOR
APPELLANT:

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE SUSAN HOOPER:

Jude A. Hagan
Lebanon, Kentucky


BRIEF AND ORAL ARGUMENT
FOR APPELLEE EDGAR
GRIBBINS:

Michael William Niemietz
Bardstown, Kentucky